**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:24-81191-Civ-ROSENBERG/REINHART

| | |
|---|---|
| MICHAEL LEWITTER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TERRAN ORBITAL CORPORATION, MARC H. BELL, MATHIEU RIFFEL, GARY A. HOBART, and STRATTON SCLAVOS, <br><br> Defendants. | <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF MOVANT THE TERRAN INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .................................................................................................................... 7

    I.      THE TERRAN INVESTOR GROUP SHOULD BE APPOINTED AS LEAD PLAINTIFF.............................................................................................................. 7

           A.      The Terran Investor Group Has the Largest Financial Interest .................. 7

           B.      The Terran Investor Group Satisfies the Applicable Requirements of Rule 23.................................................................................................... 9

    II.     ROMIG'S COMPETING MOTION SHOULD BE DENIED ............................ 13

           A.      The Terran Investor Group Has the Largest Financial Interest of Any Competing Movant ................................................................................... 13

           B.      Romig Is Atypical, Inadequate, and Subject to Unique Disqualifying Defenses ................................................................................................... 14

                  1.      False Statements or Errors in Romig's Submissions Render him Inadequate Under Rule 23 ............................................................ 14

                  2.      Romig Is Subject to Unique Defenses Related to His Standing ... 16

                  3.      Romig Has Not Provided Sufficient Information to the Court to Evaluate His Adequacy ................................................................. 19

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*China Agritech, Inc. v. Resh*,
    584 U.S. 732 (2018)..........................................................................................................11

*Eastwood Enterprises v. Farha*,
    No. 8:07-CV-1940-T-24MSS, 2008 WL 687351 (M.D. Fla. Mar. 11, 2008) .................2, 8, 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)......................................................................................................17, 18

*In re 21st Century Holding Co. Sec. Litig.*,
    No. 07-61057-CIV, 2007 WL 9220955 (S.D. Fla. Nov. 20, 2007) ..............................1, 2, 3, 8

*In re Bally Total Fitness Sec. Litig.*,
    No. 04C3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ...............................................16, 19

*In re Bank of America Corp. Sec., Derivative and ERISA Litig.*,
    No. 09-MD-2058, 2011 WL 3211472 (S.D.N.Y. 2011)........................................................6, 17

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).......................11

*In re Boeing Co. Aircraft Sec. Litig.*,
    No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) .............................................19

*In re BP, PLC Sec. Litig.*,
    758 F.Supp.2d 428 (S.D. Tex. 2010) ..................................................................................5, 12

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)....................................................................................................11

*In re Enron Corp., Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002)............................................................................................16

*In re HEXO Corp. Sec. Litig.*,
    No. 19 Civ. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) .............................19

*In re Mersho*,
    6 F.4th 891, 899 (9th Cir. 2021). ...........................................................................................11

*In re Peregrine Sys., Inc. Sec. Litig.*,
    No. CIV.02 CV 870-J(RBB), 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ........................13

*In re Surebeam Corp. Sec. Litig.*,
No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004)............................5, 16

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................................................7, 9

*Kornfield v. Opteum Inc.*,
No. 07-14278-CIV, 2008 WL 11408525 (S.D. Fla. Sept. 29, 2008).............................2, 8, 11

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ............................................12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).............................................................................................................16

*McFalls v. Purdue*,
No. 3:16-cv-2116-SI, 2018 WL 785866 (D. Or. Feb. 8, 2018) ....................................6, 17, 18

*Miller v. Dyadic Int'l, Inc.*,
No. 07-80948-CIV, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)......................................3, 10

*Miller v. Ventro Corp.*,
No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ....................................5, 13

*Narra v. Skyhop Techs., Inc.*,
703 F.Supp.3d 1037 (N.D. Cal. 2023) .............................................................................17, 18

*Newman v. Eagle Bldg. Techs.*,
209 F.R.D. 499 (S.D. Fla. 2002)....................................................................................1, 8, 11

*Piven v. Sykes Enterprises, Inc.*,
137 F.Supp.2d 1295 (M.D. Fla. 2000)........................................................................... *passim*

*Prado-Steinman ex rel. Prado v. Bush*,
22 F.3d 1266 (11th Cir. 2000) ..........................................................................................3, 9

*Rodriguez v. DraftKings Inc.*,
No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021).....................5, 14, 15

*Schaffer v. Horizon Pharma Plc*,
No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ................................16

*Schlimm v. Welbilt, Inc.*,
No. 8:18-CV-3007-T-30-AEP, 2019 WL 3815149 (M.D. Fla. July 3, 2019) ......................2, 8

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2015).......................................................................................................16

iii

*Tomaszewski v. Trevena, Inc.*,
    383 F.Supp.3d 409 (E.D. Pa. 2019) ..................................................................................14

*Tran v. ERBA Diagnostics, Inc.*,
    No. 15-CV-24440, 2016 WL 7438833 (S.D. Fla. Apr. 8, 2016) ..........................................7, 9

*Vincelli v. National Home Health Care Corp.*,
    112 F.Supp.2d 1309 (M.D. Fla. 2000)...............................................................................2, 8

*Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
    No. CIV A 07-177 FLW, 2007 WL 2683636 (D.N.J. Sept. 7, 2007)......................................14

**Statutes**

15 U.S.C. §78j(b) ...............................................................................................................16

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................ *passim*

PSLRA ............................................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

Lead Plaintiff Movant, the Terran Investor Group,[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel (Dkt. No. 10); and in opposition to the competing motion of Aaron Romig ("Romig") (Dkt. No. 13).[2]

### PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Terran securities.  As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court "***shall*** adopt a presumption that the most adequate plaintiff . . . is the person ***or group of persons***" that, *inter alia*, "has the ***largest financial interest*** in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

It is well-established in this District (as well as the Middle District of Florida) that "[w]hen moving for lead plaintiff, ***aggregation of individual losses to form a small group is acceptable***, and 'derives from the language of the PSLRA which states that the most adequate plaintiff is the 'person ***or group of persons***,'" and further that "[t]here is no requirement contained in the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves." *In re 21st Century Holding Co. Sec. Litig.*, No. 07-61057-CIV, 2007 WL 9220955, at *4 (S.D. Fla. Nov. 20, 2007) (emphases added) (citing cases).  Instead, "the PSLRA focuses on whether the person or group that is the proposed lead plaintiff can fairly and adequately serve as lead plaintiff." *Id.*; *see also Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499,

---

[1] All capitalized terms herein are defined in the Terran Investor Group's moving brief, unless otherwise indicated.  *See* Dkt. No. 10.

[2] Initially, two other putative Class members, Edward Pedraza ("Pedraza") and Charles Snipes ("Snipes"), filed similar competing motions.  *See* Dkt. Nos. 11-12.  Both Snipes and Pedraza subsequently withdrew their respective motions.  *See* Dkt. Nos. 14, 18.

503-04 (S.D. Fla. 2002) (appointing group of four individuals and two banking entities after finding it is "not . . . appropriate to limit aggregation when the PSLRA specifically allows for a group of persons to serve as lead plaintiff" and "[t]here is no requirement contained in the PSLRA that the group . . . have a relationship among themselves"); *Schlimm v. Welbilt, Inc.*, No. 8:18-CV-3007-T-30-AEP, 2019 WL 3815149, at *2 (M.D. Fla. July 3, 2019) ("[T]he aggregation of losses is appropriate to form a group of plaintiffs for purposes of lead plaintiff status," and the "level of relatedness" among group members "is not something the Court must analyze." (citing cases)); *Eastwood Enterprises v. Farha*, No. 8:07-CV-1940-T-24MSS, 2008 WL 687351, at *2-4 (M.D. Fla. Mar. 11, 2008) (finding "[d]istrict courts within the Eleventh Circuit have allowed aggregation of a group's loss" to determine the "most adequate plaintiff" under the PSLRA, and appointing group of five, noting joint declaration attesting to, *inter alia*, "their desire to join together to litigate this action" and "that they would oversee counsel[]").

Further, this District (as well as the Middle District of Florida) recognizes that the "most important factor in determining the lead plaintiff is the amount of financial interest claimed," and that "financial interest" is measured based on the size of the losses suffered. *21st Century*, 2007 WL 9220955, at *4; *see also Kornfield v. Opteum Inc.*, No. 07-14278-CIV, 2008 WL 11408525, at *4 (S.D. Fla. Sept. 29, 2008) (focusing on losses); *Vincelli v. National Home Health Care Corp.*, 112 F.Supp.2d 1309, 1317 (M.D. Fla. 2000) (same).

Here, the "person or group of persons" with the "largest financial interest" is plainly the Terran Investor Group, which incurred a loss of approximately $774,985 calculated on a FIFO basis, or $776,603 calculated on a LIFO basis, in connection with its Class Period transactions in Terran securities. *See* Dkt. No. 10-3. The table below sets forth the respective claimed losses of the competing movants:

2

| Movant | Loss |
|---|---|
| Terran Investor Group | FIFO: $774,985<br>LIFO: $776,603 |
| Romig | $432,552 (no FIFO disclosure) |

As the above table reflects, the Terran Investor Group's loss is ***hundreds of thousands of dollars larger*** than that claimed by Romig, the only competing movant, whether calculated on a FIFO or LIFO basis.  Indeed, Romig only discloses his losses under LIFO (Dkt. No. 13-5), but does not disclose whether he made any pre-Class Period purchases that could change his losses if calculated using a FIFO methodology.  *See 21st Century*, 2007 WL 9220955, at *4 (holding that "statutory presumption has been sufficiently rebutted" with respect to movant whose losses were "adversely affected by the choice of accounting methodology").

Aside from possessing the largest financial interest in the outcome of this litigation, the Terran Investor Group also strongly satisfies Rule 23's typicality and adequacy requirements. *First*, the Terran Investor Group's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See Prado-Steinman ex rel. Prado v. Bush*, 22 F.3d 1266, 1279 (11th Cir. 2000); *Piven v. Sykes Enterprises, Inc.*, 137 F.Supp.2d 1295, 1306 (M.D. Fla. 2000).

*Second*, the Terran Investor Group is aware of no conflict between its interests and those of the Class, and has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel and Liaison Counsel for the Class, as reflected in Pomerantz and Miller Shah's respective resumes (Dkt. Nos. 10-7, 10-8).  *See Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *6 (S.D. Fla. Apr. 18, 2008).

*Third*, three out of the four individuals in the Terran Investor Group are either military veterans or worked in contract, procurement, and accounting for the Department of Defense. *See* Dkt. No. 10-6 ¶¶ 3-4 (Mr. O'Neill "spent approximately twenty years in **contracting** with the U.S. Air Force (retiring with a rank of Lieutenant Colonel), and then spent approximately twenty years as a **procurement analyst** with the U.S. Department of Defense"; Ms. O'Neill "spent approximately 33 years as an **accountant** with the Department of the Navy"; and Mr. Ramirez "served in the Air Force and the Army."). This relevant experience will undoubtedly aid the Class in litigating claims against Terran, which operates in the aerospace and defense industries, and depends on procuring contracts with military agencies. *See, e.g.*, https://spacenews.com/terran-orbital-york-space-win-u-s-military-satellite-contracts/ (article dated August 16, 2024, entitled "*Terran Orbital, York Space win U.S. military satellite contracts*," describing Terran's new $254 million contract with the Space Development Agency, a Pentagon agency that develops, fields, and operates space-based capabilities for the Department of Defense).

*Fourth*, the Terran Investor Group is a small group of four likeminded investors—two of whom are a married couple—that have robustly demonstrated their cohesiveness via a detailed Joint Declaration attesting to, *inter alia*, their backgrounds and their readiness to collaboratively shoulder the responsibilities of lead plaintiffs under the PSLRA, including by overseeing the efforts of counsel (*see generally* Dkt. No. 10-6). Thus, the Terran Investor Group constitutes exactly the kind of group that the PSLRA and courts in the Eleventh Circuit, including in this District, expressly permit to serve as lead plaintiff in securities class actions, as per the authorities cited above.

4

*Fifth*, because the Terran Investor Group includes investors in two different types of securities that were publicly issued by Terran during the Class Period, namely common stock and warrants, its composition will ensure that the interests of all Class members are represented in this litigation's leadership structure. *See In re BP, PLC Sec. Litig.*, 758 F.Supp.2d 428, 441-42 (S.D. Tex. 2010) (appointing co-lead plaintiffs representing different theories of legal recovery because, *inter alia*, "'[a]llowing for diverse representation . . . ensures that the interests of all class members will be adequately represented'" (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998))); *Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *11 (N.D. Cal. Nov. 28, 2001) (appointing co-lead plaintiffs to represent shareholders and bondholders to "[t]ogether . . . represent the entire putative class of litigants").

In stark contrast, Romig, the only competing movant, is atypical and inadequate under Rule 23 and disqualified from consideration, irrespective of his claimed loss, because: (i) his submissions, including his sworn Certification, contain glaring falsehoods or errors; (ii) he is subject to unique disqualifying defenses regarding his standing to pursue the Action's claims on behalf of the Class; and (iii) he has provided no information about himself from which the Court can assess his adequacy. Any one of the foregoing issues individually is fatal to Romig's motion. *See, e.g.*, *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *6, *9 (S.D.N.Y. Nov. 12, 2021) (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative"); *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (denying lead plaintiff motion upon "find[ing] that there is at least a potential that [movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class"); *Piven*, 137 F.Supp.2d at 1305 (finding

movant inadequate to serve as lead plaintiff where it "has not proffered any information regarding its identity, resources, and experience").

Here, Romig's moving brief states that, "[a]s evidenced in his certification and loss chart, ***through the assigned claims***, [he] incurred a substantial loss of $432,551.65[.]"  Dkt. No. 13-1 at 7 (emphasis added).  However, contrary to this assertion, there is ***no*** evidence in Romig's motion papers that ***any*** claims were assigned to him in connection with this litigation.  Further, as discussed in more detail in Section II.B.1., the fact that the only investment losses that Romig seeks to recover in this litigation were incurred in connection with purchases and sales of Terran securities by some unidentified assignor, and ***not by Romig himself***, renders the statement in his Certification that "***[he]*** has made the . . . transaction(s) during the Class Period in the securities that are the subject of this action" (Dkt. No. 13-4 ¶ 4 (emphasis added)) demonstrably false. Likewise, Romig's assertion in his moving brief that he "seeks recovery . . . on Class Period purchases of Terran common stock ***and warrants***" and that "[t]he transactions in Terran common stock ***and warrants*** during the Class Period for which [he] seeks a recovery are set forth in [his] Certification" (Dkt. No. 13-1 at 1, 1 n.1 (emphases added)) is inconsistent with his sworn Certification, which only shows transactions in Terran common stock (*see* Dtk. No. 13-4 at *3).

Moreover, given that Romig has failed to produce the purported assignment of claims that he purports to pursue in this litigation, Romig has plainly failed to establish that he even possesses Article III standing to pursue fraud claims against the Defendants.  *See In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058, 2011 WL 3211472, at *12-14 (S.D.N.Y. 2011); *McFalls v. Purdue*, No. 3:16-cv-2116-SI, 2018 WL 785866, at *8 (D. Or. Feb. 8, 2018).

In addition, Romig has provided virtually *no* information about himself for the Court to evaluate his adequacy to oversee the fraud claims in this Action, which is a sufficient, independent reason to deny his motion. *See Piven*, 137 F.Supp.2d at 1305.

Finally, as noted above, Romig failed to disclose whether he made any pre-Class Period purchases that could modify his losses if calculated on a FIFO basis.

For the reasons set forth herein, the Terran Investor Group respectfully submits that the Court should grant its motion in its entirety and deny Romig's competing motion.

## ARGUMENT

### I.   THE TERRAN INVESTOR GROUP SHOULD BE APPOINTED AS LEAD PLAINTIFF

The PSLRA creates a strong presumption that the lead plaintiff is the "person *or group of persons*" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy under Rule 23. *See Tran v. ERBA Diagnostics, Inc.*, No. 15-CV-24440, 2016 WL 7438833, at *1 (S.D. Fla. Apr. 8, 2016); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Once this presumption is triggered, it may be rebutted only upon "proof" that the presumptive lead plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, the most adequate class representative is the Terran Investor Group.

#### A.   The Terran Investor Group Has the Largest Financial Interest

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person *or group of persons* that . . . has the largest financial interest in the relief sought by the class." *Id.* § 78u-4(a)(3)(B)(iii) (emphasis added). As per the authorities cited above in the Introduction, it is well-established in this District (as well as the Middle

District of Florida) that based on the foregoing language in the PSRLA, aggregation of individual losses to form a small group is acceptable, and there is no requirement that the group of persons serving as lead plaintiff have a relationship among themselves. *See 21st Century*, 2007 WL 9220955, at *4; *Newman*, 209 F.R.D. at 503-04; *Schlimm*, 2019 WL 3815149, at *2; *Eastwood*, 2008 WL 687351, at *2-4.

Further, while the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Eleventh Circuit, including in this District specifically, recognize that the amount of financial loss is the most significant factor to be considered. *See, e.g.*, *21st Century*, 2007 WL 9220955, at *4 ("most important factor in determining the lead plaintiff is the amount of financial interest claimed," and "financial interest" is measured based on the size of the losses suffered); *Kornfield*, 2008 WL 11408525, at *4 (focusing on losses); *Vincelli*, 112 F.Supp.2d at 1317 (same).

Under the foregoing analysis, the Terran Investor Group clearly possesses the largest financial interest in this Action within the meaning of the PSLRA. As the chart at p. 3 reflects, the Terran Investor Group incurred a loss of approximately $774,985 calculated on a FIFO basis, or $776,603 calculated on a LIFO basis, in connection with its Class Period transactions in Terran securities (*see* Dkt. No. 10-3), which is ***hundreds of thousands of dollars larger*** than the $432,552 loss claimed by Romig (*see* Dkt. No. 13-5), the only competing movant, whether calculated on a FIFO or LIFO basis. Moreover, because Romig is atypical, inadequate, and subject to unique disqualifying defenses, as discussed in detail in Section II.B., *infra*, he in any event cannot satisfy the PSLRA's statutory requirements for appointment as lead plaintiff and is thus disqualified from consideration, irrespective of his claimed financial interest in this litigation. Accordingly, as the ***only*** movant eligible for appointment as Lead Plaintiff in this

8

Action, the Terran Investor Group by default has the largest financial interest in this litigation within the meaning of the PSLRA.

**B.      The Terran Investor Group Satisfies the Applicable Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of this litigation—and thus being the statutorily presumed "most adequate plaintiff" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb))—the Terran Investor Group has plainly made the requisite *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23. *See Tran*, 2016 WL 7438833, at *1 (appointing investor that "made a *prima facie* showing that [it] satisfies the typicality and adequacy requirements of [Rule 23]"); *Kaplan*, 240 F.R.D. at 94 ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").

*First*, the Terran Investor Group's claims in this litigation satisfy the typicality requirement of Rule 23(a)(3) because its claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Prado*, 22 F.3d at 1279; *Piven*, 137 F.Supp.2d at 1306. The Terran Investor Group, like other Class members, purchased Terran securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Terran's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23. *See Prado*, 22 F.3d at 1279; *Piven*, 137 F.Supp.2d at 1306.

*Second*, the Terran Investor Group satisfies the adequacy requirement of Rule 23(a)(4) because its significant financial interest gives it a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, it is aware of no conflict between its interests and those of the Class, and it has selected and retained counsel that are highly capable and

experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel and Liaison Counsel for the Class, as detailed in Pomerantz and Miller Shah's respective resumes (Dkt. Nos. 10-7, 10-8). *See Miller*, 2008 WL 2465286, at *6.

*Third*, three out of the four members of the Terran Investor Group formerly served in the military or worked for the Department of Defense, and thus are knowledgeable about the particular industries in which the Company operates—namely, aerospace and defense (*see* Dkt. No. 1 ¶ 2; Dkt. No. 10-6 ¶¶ 3-4). In particular, Michael O'Neill has a Bachelor's degree in Business Administration, a Master's in Economics, and a Master's in Engineering Systems, and previously spent approximately twenty years in contracting with the U.S. Air Force (retiring with a rank of Lieutenant Colonel), before spending approximately twenty years as a procurement analyst with the U.S. Department of Defense. Dkt. No. 10-6 ¶ 3. Likewise, Jill O'Neill, who is married to Michael O'Neill, has an associate degree in accounting and previously spent approximately thirty-three years as an accountant with the Department of the Navy, retiring as a Senior Accountant. *Id.* Moreover, Jesse Ramirez served in the Air Force and the Army, retiring as a Specialist. *Id.* ¶ 4. These investors' highly pertinent experience, as well as their diverse perspectives and investing experience, will undoubtedly aid the Class in litigating the fraud claims against the Company, which concerns the procurement of military contracts. *See, e.g.*, https://spacenews.com/terran-orbital-york-space-win-u-s-military-satellite-contracts/.

*Fourth*, the Terran Investor Group is a small and cohesive group of four likeminded investors—two of whom are a married couple—each of whom incurred significant losses in connection with the alleged fraud in this Action. They, therefore, constitute an appropriate movant group of the type expressly permitted by the PSLRA and routinely appointed to serve as lead plaintiffs in PSLRA actions, including in the Eleventh Circuit and this District specifically.

10

*See* 15 U.S.C. § 78u–4(a)(3)(B)(iii) ("[T]he most adequate plaintiff . . . is the person *or group* of persons that . . . has the largest financial interest in the relief sought by the class." (Emphasis added.)); *Newman*, 209 F.R.D. at 503-04 (collecting cases in this District and finding it is "not . . . appropriate to limit aggregation when the PSLRA specifically allows for a group of persons to serve as lead plaintiff", that "[t]here is no requirement contained in the  PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves", and appointing group of four individuals and two banking entities as lead plaintiffs); *Kornfield*, 2008 WL 11408525, at *2, *7 (appointing group of three as lead plaintiffs); *Eastwood*, 2008 WL 687351, at *2, *4 (finding "[d]istrict courts within the Eleventh Circuit have allowed aggregation of a group's loss in order to determine whether the group is the presumptively most adequate plaintiff" and appointing group of five as lead plaintiff); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff."). Indeed, in *China Agritech, Inc. v. Resh*, the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups." 584 U.S. 732, 742 n.3 (2018).  More recently, in *In re Mersho*, the Ninth Circuit Court of Appeals likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff.  6 F.4th 891, 899 (9th Cir. 2021).

*Fifth*, courts in the Eleventh Circuit and around the country routinely find movant groups to be adequate where, as here, they have robustly demonstrated their cohesiveness via submission of a detailed Joint Declaration.  *See, e.g.*, *Eastwood*, 2008 WL 687351, at *3 (appointing group of five and noting joint declaration attesting to, *inter alia*, "their desire to join together" and "that they would oversee counsel's prosecution of this action"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y.

11

Dec. 15, 2017) (appointing group of four unrelated investors that submitted declaration attesting

"it is prepared to work cooperatively to serve the best interests of the class," and finding the

group is not "so large as to be unwieldly and impracticable"); *Louisiana Mun. Police Employees'*

*Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3

(D. Vt. Apr. 27, 2012) (finding joint declaration "sufficient to assure the Court that the [lead]

plaintiffs will effectively manage the litigation").

Here, the Terran Investor Group has submitted a detailed Joint Declaration executed by

its members in which they:

- Provide detailed information about themselves, including their educational and professional backgrounds, cities and states of residence, ages, and investment experience (*see* Dkt. No. 10-6 ¶¶ 3-5);

- Explain their reasons for seeking appointment jointly as co-lead plaintiffs (*id.* ¶ 11) ("We each determined that we could ***maximize the Class's recovery by pooling our respective resources and experience*** by jointly seeking appointment as Co-Lead Plaintiffs. After consulting with our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs, and subsequently approved the filing of a joint motion seeking our appointment as Co-Lead Plaintiffs. We agree that ***our collective resources and our ability to engage in joint decision-making will materially benefit and advance the interests of the Class*** in this case." (Emphases added.));

- Attest in detail to their understanding of the responsibilities of a lead plaintiff appointed pursuant to the PSLRA and their readiness to undertake those responsibilities (*id.* ¶¶ 6-9, 13-14); and

- Attest to their communication with one another prior to the filing of their motion (*id.* ¶ 6) ("We discussed this case . . . ***with each other***, by phone during a conference call held on Thursday, November 21, 2024." (Emphasis added.)).

*Sixth*, the Terran Investor Group includes investors in two different types of securities

that were publicly issued by Terran during the Class Period, namely common stock ***and***

warrants, making it particularly well-suited to represent the interests of ***all*** Class members.  *See*

*BP*, 758 F.Supp.2d at 441-42 (appointing co-lead plaintiffs representing different theories of

12

legal recovery because, *inter alia*, "'[a]llowing for diverse representation . . . ensures that the interests of all class members will be adequately represented'" (quoting *Oxford*, 182 F.R.D. at 49)); *Miller*, 2001 WL 34497752, at *11 (appointing co-lead plaintiffs to represent shareholders and bondholders to "represent the entire putative class"); *In re Peregrine Sys., Inc. Sec. Litig.*, No. CIV.02 CV 870-J(RBB), 2002 WL 32769239, at *11-12 (S.D. Cal. Oct. 11, 2002) (appointing "co-lead plaintiffs" to represent different claims because "appointment of co-lead plaintiffs will better represent the class members' varying and perhaps conflicting interests"). As noted in the Complaint, Terran's common stock and warrants both publicly traded on the New York Stock Exchange during the Class Period (*see* Dkt. No. 1 ¶ 19), and the Class definition includes investors in both of these types of securities (*see id.* ¶¶ 1, 95). Accordingly, the Terran Investor Group, which includes investors in the Company's common stock *and* warrants, would ensure that this Class's leadership is incentivized to represent the interests of *all* Class members.

Because the Terran Investor Group has the largest financial interest in the relief sought by the Class and otherwise satisfies the applicable requirements of Rule 23, it is the presumptive "most adequate" plaintiff of the Class within the meaning of the PSLRA. To overcome the strong presumption entitling the Terran Investor Group to appointment as Lead Plaintiff, the PSLRA requires *"proof"* that the Terran Investor Group is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

## II.     Romig's COMPETING MOTION SHOULD BE DENIED

### A.     The Terran Investor Group Has the Largest Financial Interest of Any Competing Movant

As discussed further in Section I.A., *supra*, Romig cannot claim a larger financial interest in this litigation than the Terran Investor Group. Accordingly, it is self-evident that Romig

cannot satisfy the PSLRA's first criterion for appointment as Lead Plaintiff.  This fact alone mandates denial of Romig's competing motion.

> **B.      Romig Is Atypical, Inadequate, and Subject to Unique Disqualifying Defenses**

> > **1.      False Statements or Errors in Romig's Submissions Render him Inadequate Under Rule 23**

Romig is inadequate under Rule 23 because his Certification (Dkt. No. 13-4) and motion papers are facially false and defective.  Courts routinely disqualify movants from consideration for appointment as lead plaintiff on the basis of such errors.  *See, e.g.*, *Rodriguez*, 2021 WL 5282006, at *6, *9 (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *Tomaszewski v. Trevena, Inc.*, 383 F.Supp.3d 409, 414 (E.D. Pa. 2019) (disqualifying movant when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177 FLW, 2007 WL 2683636, at *7-8 n.8 (D.N.J. Sept. 7, 2007) (denying motion by movant whose certification was "plagued with misinformation").

Here, Romig's Certification, the accuracy of which he swore to "under penalty of perjury" (Dkt. No. 13-4 at *2), lists numerous transactions in Terran securities (*see id.* at *3), which Romig swears "*[he]* has made . . . during the Class Period[.]"  *Id.* ¶ 4 (emphasis added).  However, in his moving brief, Romig states that, "[a]s evidenced in his certification and loss chart, ***through the assigned claims***, [he] incurred a substantial loss of $432,551.65[.]"  Dkt. No. 13-1 at 7 (emphasis added).  Accordingly, because Romig's motion brief indicates that the only

14

claims he pursues in this litigation were those that were assigned to him—that is, the claims of some unidentified assignor who purchased Terran securities during the Class Period—Romig's statement in his Certification that he himself purchased the Terran securities at issue can only be false. Likewise, Romig's assertion in his moving brief that "the assigned claims" are "evidenced in his certification and loss chart" (*id.*) is demonstrably false. Romig has ***not*** submitted any assignment, nor so much as referenced it—let alone "evidenced" it—anywhere else in this motion papers. *See generally* Dkt. No. 13. Moreover, Romig states in his moving brief that he "seeks recovery of a loss of $432,551.65 on Class Period purchases of Terran common stock ***and warrants***" and that "[t]he transactions in Terran common stock ***and warrants*** during the Class Period for which [he] seeks a recovery are set forth in [his] Certification[.]" Dkt. No. 13-1 at 1, 1 n.1 (emphases added). However, Romig's Certification only shows transactions in Terran common stock. *See* Dtk. No. 13-4 at *3. Accordingly, either (i) the foregoing statements in Romig's moving brief are false, or (ii) his sworn Certification is additionally false for failing to disclose Class Period transactions in Terran warrants. Neither scenario bodes well for Romig's readiness to serve as a class representative in a complex securities class action. These false statements and glaring omissions in Romig's "submissions [are] undoubtedly relevant and concerning, and play[] an important role in the Court's assessment of his adequacy as a putative class representative" because, "[h]ad [Romig] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place." *Rodriguez*, 2021 WL 5282006, at *6, *9.

The Terran Investor Group respectfully urges the Court not to dismiss the foregoing issues as minor or clerical errors. This litigation is a complex securities class action, and the Court-appointed Lead Plaintiff will be required to diligently review all significant filings and

15

supervise the efforts of counsel.  Romig's failure to identify an obvious error or observe the necessary legal formalities with his very first submissions should not give the Court confidence that he is prepared to serve as a fiduciary on behalf of the Class.

### 2. Romig Is Subject to Unique Defenses Related to His Standing

Romig is subject to unique disqualifying defenses because he has not established his standing to pursue the fraud claims against the Defendants in this litigation.  The PSLRA precludes the appointment of a Lead Plaintiff who "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."  *In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005); *see also Surebeam*, 2004 WL 5159061, at *7 (denying motion upon "find[ing] that there is at least a potential that [movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class"); *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (finding "'proof' of a non-speculative risk that the movant will not be adequate" sufficient to disqualify movant); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 456 (S.D. Tex. 2002) (denying motion for lead plaintiff appointment due to "information [that] raises more than the mere specter of . . . unique defenses").

"[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2015) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)).  "[T]he injury must affect the plaintiff in a personal and individual way."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).  In a securities fraud action under Section 10(b) of the Exchange Act, the injury-in-fact requirement is satisfied when the plaintiff was a

beneficial owner of the securities at issue and engaged in a purchase or sale during the relevant period during which misconduct allegedly occurred (*i.e.*, during the Class Period).  *See, e.g.*, *Bank of America*, 2011 WL 3211472, at \*12.  In addition, a plaintiff's standing is assessed "at the outset of the litigation."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *see also McFalls*, 2018 WL 785866, at \*8 ("Article III standing is evaluated by considering the facts as they existed at the time of the commencement of the action."); *Narra v. Skyhop Techs., Inc.*, 703 F.Supp.3d 1037, 1039 n.1 (N.D. Cal. 2023) ("Standing . . . is measured from the time when a cause of action is filed, not from the time when a party corrects any defects in its initial pleading of that cause.").

Here, Romig has not established that he is the beneficial owner of the securities at issue—that is, the party or parties that were actually harmed by Defendants' alleged fraud—or is otherwise entitled to pursue fraud claims in this litigation.  Rather, Romig acknowledges in his moving brief that he is ***not*** the beneficial owner of the securities at issue, stating that, "[a]s evidenced in his certification and loss chart, ***through the assigned claims***, [he] incurred a substantial loss[.]"  Dkt. No. 13-1 at 7 (emphasis added).  Accordingly, Romig's Article III standing appears to rest on "the assigned claims" through which he purportedly incurred a loss, which Romig states is "evidenced in his certification and loss chart[.]"  *Id.*  However, contrary to Romig's assertion that "the assigned claims" are "evidenced in his certification and loss chart" (*id.*), he has submitted ***no*** documentation supporting an alleged assignment of claims to him with his motion papers, which in fact contain ***zero*** evidence, or even any reference to, any such assignment, apart from the single statement regarding this purported assignment in his motion brief.  *See generally* Dkt. No. 13.  Romig's standing to pursue claims on behalf of the Class thus rests entirely on the conclusory statement in his moving brief that "through the assigned claims,

17

[he] incurred a substantial loss[.]" Dkt. No. 13-1 at 7.   Absent any documentation of, or evidence regarding, the assignment of claims, the Court and parties to this litigation are left to guess at a litany of questions relevant to the legal validity of the purported assignment, including, *inter alia*, the identity of the assignor; the terms of the assignment; the form of the assignment of claims (*i.e.*, written or verbal); and whether the purported assignment is even valid under the laws of the relevant jurisdiction—which itself is yet another unanswered question, given Romig's failure to provide the Court with even the most basic information about himself, including his domicile (as discussed in greater detail *infra* at Section II.B.3.).

Romig's failure at the outset of this litigation to submit documentation or evidence sufficient to establish his standing through the assigned claims he has referenced as the source of his purported losses is fatal to his motion for appointment as lead plaintiff.  *See Friends of the Earth*, 528 U.S. at 180 (standing is assessed "at the outset of the litigation"); *McFalls*, 2018 WL 785866, at *8  ("Article III standing is evaluated by considering the facts as they existed at the time of the commencement of the action."); *Narra*, 703 F.Supp.3d at 1039 n.1 ("Standing . . . is measured from the time when a cause of action is filed[.]").  Nor may Romig "correct[] any defects" with his purported Article III standing by filing amended or subsequent submissions. *Narra*, 703 F.Supp.3d at 1039 n.1.  Romig's failure to establish his standing through the assigned claims he has referenced is likewise troubling given that the Defendants are virtually guaranteed to demand such proof of Romig's standing if this lawsuit survives a motion to dismiss and proceeds to discovery.  At the very least, the Defendants will vigorously litigate the question of Romig's standing, thereby distracting Romig from the prosecution of the Class's fraud claims. In the worst-case scenario, if Romig is subsequently found ***not*** to have standing to pursue the fraud claims in this lawsuit, then the Class's claims risk dismissal for esoteric reasons unique to

18

Romig and irrelevant to the overwhelming majority of Class members.  Romig's appointment as Lead Plaintiff will therefore subject the Class to the litigation of standing-related issues that would be unique to the Lead Plaintiff and irrelevant to most Class members.  There is simply no reason to subject the Class's claims to such a foreseeable risk.  *See Bally*, 2005 WL 627960, at *6 ("The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed.").

### 3.   Romig Has Not Provided Sufficient Information to the Court to Evaluate His Adequacy

Romig has provided virtually *no* information about himself for the Court to evaluate his adequacy to oversee the fraud claims in this Action.  While the standard for evaluating adequacy at the lead plaintiff appointment stage is *prima facie*, courts have nevertheless denied motions by movants that have provided no meaningful information about themselves.  *See, e.g.*, *Piven*, 137 F.Supp.2d at 1305 (finding movant inadequate to serve as lead plaintiff where it "has not proffered any information regarding its identity, resources, and experience"); *In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965 (NRB), 2020 WL 5503634, at *1 (S.D.N.Y. Sept. 11, 2020) ("[A]mple case law supports what one would have thought is an uncontroversial point–namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication."); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (denying motion where "[t]he complete dearth of information accompanying the [movants'] lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation").

Here, in stark contrast to the detailed proffer set forth in the Joint Declaration that the Terran Investor Group submitted with its motion (*see* Dkt. No. 10-6), Romig has conspicuously provided *no* biographical information about himself from which the Court can gauge his

19

adequacy to oversee this Action on behalf of a Class of potentially hundreds or thousands of injured investors. All that Romig has offered to the Court is his name and the unsworn assertion that one or more unknown entities or persons purportedly assigned unspecified claims to him in connection with this litigation. *See* Dkt. No. 13-1 at 7. Where does Romig live? Is he located in the United States? What is his age? What is his occupation or educational background? What level of investment experience does he possess? Is he aware of the responsibilities of serving as a lead plaintiff under the PSLRA? What led to his decision to serve as a lead plaintiff? Is he aware that a motion has been filed on his behalf and its significance? Does he understand the posture of this litigation? Is he prepared to oversee his selected counsel to ensure this Action's claims are prosecuted in an efficient and cost-effective manner? The Court is left to guess at the answers to the foregoing questions because Romig simply "has not proffered any information regarding [his] identity, resources, and experience", leaving the Court "to question the vigor with which [Romig] intends to prosecute these claims on behalf of the putative class." *Piven*, 137 F.Supp.2d at 1305.[3]

## CONCLUSION

For the foregoing reasons, the Terran Investor Group respectfully requests that the Court issue an Order: (1) appointing the Terran Investor Group as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class.

Dated: December 10, 2024                    Respectfully submitted,

**MILLER SHAH LLP**

By: */s/ Jayne A. Goldstein*
Jayne A. Goldstein

---

[3] Even the correct spelling of Romig's own name is in question, given that the attorney declaration in support of his motion refers to him as both "Aaron Roming" and "Aaron Romig." *See* Dkt. No. 13-2 at 1.

20

Nathan C. Zipperian
2103 N. Commerce Parkway
Ft. Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
jagoldstein@millershah.com
nczipperian@millershah.com

*Counsel for the Terran Investor Group and
Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Thomas H. Przybylowski
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Counsel for the Terran Investor Group and
Proposed Lead Counsel for the Class*

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter
(*pro hac vice* application forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Additional Counsel for the Terran Investor Group*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 10, 2024, I electronically filed a true and correct copy

of the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the

foregoing document is being served this day on all counsel of record via CM/ECF.

*/s/ Jayne A. Goldstein*
Jayne A. Goldstein
