**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:24-81191-Civ-ROSENBERG/REINHART

| | |
|---|---|
| MICHAEL LEWITTER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TERRAN ORBITAL CORPORATION, MARC H. BELL, MATHIEU RIFFEL, GARY A. HOBART, and STRATTON SCLAVOS,<br><br>Defendants. | <u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF
MOVANT THE TERRAN INVESTOR GROUP FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.       THE TERRAN INVESTOR GROUP IS AN APPPROPRIATE MOVANT
            GROUP ........................................................................................................... 2

    II.     ROMIG IS INADEQUATE, ATYPICAL, AND SUBJECT TO
            DISQUALIFYING UNIQUE DEFENSES ........................................................... 8

CONCLUSION ........................................................................................................................ 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansfield v. Omnicare, Inc.*,
   No. CV 11-173-DLB-CJS, 2012 WL 12924531 (E.D. Ky. Mar. 12, 2012) ..............................7

*Carvelli v. Ocwen Financial Corp.*,
   NO. 17-80500-CIV-Rosenberg/Hopkins, 2017 WL 11068524 (S.D. Fla. July
   14, 2017) ....................................................................................................................................2, 3

*China Agritech, Inc. v. Resh*,
   584 U.S. 732 (2018)....................................................................................................................1

*Eastwood Enterprises v. Farha*,
   No. 8:07-CV-1940-T-24MSS, 2008 WL 687351 (M.D. Fla. Mar. 11, 2008) ..........................3

*Haideri v. Jumei International Holding Limited*,
   No. 20-cv-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020)...................................10

*Hunt v. Bloom Energy Corp.*,
   No. 19-CV-02935-HSG, 2021 WL 1110260 (N.D. Cal. Mar. 23, 2021) ..................................6

*In re 21st Century Holding Co. Sec. Litig.*,
   No. 07-61057-CIV, 2007 WL 9220955 (S.D. Fla. Nov. 20, 2007) .......................................1, 3

*In re Block, Inc. Sec. Litig.*,
   No. 22-CV-8636 (RA), 2024 WL 639470 (S.D.N.Y. Feb. 15, 2024) ......................................6

*In re Viropharma Inc. Sec. Litig.*,
   No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ..................................................7

*Johnson v. OCZ Tech. Grp., Inc.*,
   No. CV 12-05265 RS, 2013 WL 75774 (N.D. Cal. Jan. 4, 2013) ............................................7

*Kornfield v. Opteum Inc.*,
   No. 07-14278-CIV, 2008 WL 11408525 (S.D. Fla. Sept. 29, 2008)....................................1, 2

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings,
   Inc.*,
   No. 20-CV-00054-SPF-JFJ, 2022 WL 377415 (N.D. Okla. Jan. 7, 2022) ..............................7

*Miller v. Dyadic Int'l, Inc.*,
   No. 07-80948-CIV, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008)...........................................2

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002)...............................................................................................3

*Prado-Steinman ex rel. Prado v. Bush*,
    22 F.3d 1266 (11th Cir. 2000) ...................................................................................2

*Rodriguez v. DraftKings Inc.*,
    No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)...........................9, 10

*Schlimm v. Welbilt, Inc.*,
    No. 8:18-CV-3007-T-30-AEP, 2019 WL 3815149 (M.D. Fla. July 3, 2019) ..........................3

*Vargas v. Citrix Systems, Inc. et al.*,
    Case No. 22-cv-62327-RAR (S.D. Fla.) ...................................................................7

*Varghese v. China Shenghuo Pharms. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)................................................................4, 8

## Statutes

Private Securities Litigation Reform Act of 1995 ................................................... *passim*

## Rules

Fed. R. Civ. P. 23...................................................................................2, 10

Lead Plaintiff Movant the Terran Investor Group[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel (Dkt. No. 10); and in opposition to the competing motion of Romig (Dkt. No. 13).

## PRELIMINARY STATEMENT

Under the overwhelming weight of authority in the Eleventh Circuit, aggregation of individual losses to form a small group of lead plaintiffs derives from language in the PSLRA providing that the most adequate plaintiff "is the person *or group of persons*" with the largest financial interest, and there "is no requirement contained in the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves." (Dkt. No. 20 at 1-2) (citing cases). Indeed, the Supreme Court itself has acknowledged that the PSLRA authorizes the appointment of investor groups as Co-Lead Plaintiffs. *China Agritech, Inc. v. Resh*, 584 U.S. 732, 742 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups.").

Accordingly, the Class Period losses of the Terran Investor Group of $774,985 on a FIFO basis, and $776,603 on a LIFO basis, trump Romig's Class Period losses of only $432,552 (calculated only on a LIFO basis), and establish the Terran Investor Group as "the person *or group of persons*" with the "largest financial interest" within the meaning of the PSLRA by a margin of hundreds of thousands of dollars. *See*, *e.g.*, *In re 21st Century Holding Co. Sec. Litig.*, No. 07-61057-CIV, 2007 WL 9220955, at *4 (S.D. Fla. Nov. 20, 2007); *Kornfield v. Opteum Inc.*, No. 07-14278-CIV, 2008 WL 11408525, at *4 (S.D. Fla. Sept. 29, 2008).

---

[1] All capitalized terms herein are defined in the Terran Investor Group's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 10, 20.

1

Further, as discussed in greater detail in its moving and opposition briefs, the Terran Investor Group has made the requisite *prima facie* showings of typicality and adequacy under Rule 23. Its claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims; the group is aware of no conflict between its interests and those of the Class; it has retained experienced and qualified counsel; and is a small and cohesive group of four investors with—most significantly—relevant experience in the defense industry to which Terran sells its satellites. (Dkt. No. 20 at 10). Thus, the Terran Investor Group is precisely the type of movant group that courts routinely appoint to serve as lead plaintiffs in PSLRA actions. *See Prado-Steinman ex rel. Prado v. Bush*, 22 F.3d 1266, 1279 (11th Cir. 2000); *Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2008 WL 2465286, at *6 (S.D. Fla. Apr. 18, 2008); *Kornfield*, 2008 WL 11408525, at *4.

Nevertheless, the only competing movant, Romig, opposes the appointment of the Terran Investor Group as lead plaintiff based on a single case (*Carvelli*) that is readily distinguishable, and more significantly, at odds with the express language of the PSLRA and overwhelming weight of relevant authority appointing groups of unrelated investors as co-lead plaintiffs under the PSLRA. Moreover, Romig asks the Court to disregard the Terran Investor Group's robust adequacy proffer and advances baseless insinuations regarding the Terran Investor Group's additional counsel.

For the reasons set forth herein, and in its prior briefs, the Terran Investor Group respectfully submits that the Court should grant its motion and deny Romig's competing motion.

**ARGUMENT**

**I.      THE TERRAN INVESTOR GROUP IS AN APPPROPRIATE MOVANT GROUP**

Contrary to Romig's argument, the Terran Investor Group is precisely the type of movant group that courts in the Eleventh Circuit have routinely appointed to serve as Lead Plaintiff in

2

PSLRA actions.  *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 503-04 (S.D. Fla. 2002) (appointing group of four individuals and two banking entities after finding it is "not . . . appropriate to limit aggregation when the PSLRA specifically allows for a group of persons to serve as lead plaintiff" and "[t]here is no requirement contained in the  PSLRA that the group . . . have a relationship among themselves").  *See also Schlimm v. Welbilt, Inc.*, No. 8:18-CV-3007-T-30-AEP, 2019 WL 3815149, at *2 (M.D. Fla. July 3, 2019); *Eastwood Enterprises v. Farha*, No. 8:07-CV-1940-T-24MSS, 2008 WL 687351, at *2-4 (M.D. Fla. Mar. 11, 2008); *In re 21st Century*, 2007 WL 9220955, at *4.

The sole Eleventh Circuit decision that Romig cites in ostensible support of his position, *Carvelli v. Ocwen Financial Corp.*, NO. 17-80500-CIV-Rosenberg/Hopkins, 2017 WL 11068524 (S.D. Fla. July 14, 2017), is easily distinguished.  In *Carvelli*, "the testimony of [the two group members] revealed that neither knew of the other's existence until their lawyers introduced them <u>after</u> their joint motion was filed."  *Id.* at *6 (emphasis in original).  Further, in *Carvelli*, the court found that one of the two group members "exposed himself as patently unfit to control counsel or lead the class" after he admitted that he had previously filed a bankruptcy petition "to fraudulently avoid foreclosure," finding that his testimony "suggest[ed] that he [was] at best naïve and lacking the awareness and ethical standards needed to perform this role."  *Id.*

None of the foregoing issues are present here.  All of the Terran Investor Group's members demonstrably were acquainted with one another ***prior*** to filing their motion.  Two of the four group members are a married couple, and all four group members participated in a conference call regarding the litigation and exchanged contact information five days ***before*** their motion was filed.  *See* Dkt. No. 10-6 ¶ 6.  Their lawyers did ***not*** simply introduce them after their motion was already filed, as in *Carvelli*.  Moreover, although Romig claims that two group

3

members, Steven Verzwyvelt and Jesse Ramirez, are not sufficiently sophisticated (Dkt. No. 21 at 4), he cites no authority requiring a lead plaintiff to possess some minimum quantum of investment experience or a background in business or accounting. Indeed, Romig ignores that Ramirez holds both a Bachelor's and a Master's Degree, served in two branches of the military, and works in the real estate industry. *See* Dkt. No. 10-6 ¶ 4. And while Verzwyvelt is, indeed, a truck driver, Romig cites no authority that suggests that truck drivers are any less capable of serving as lead plaintiffs as any other occupation. Thus, the Court should have no concerns as to the capabilities of either Ramirez or Verzwyvelt. Additionally, Romig ignores that the O'Neills each have decades of accounting and procurement experience working in defense-related positions. Dkt. No. 20 at 10. In the end, Romig's baseless attack on the adequacy of Terran Investor Group's members only highlights the fact that Romig himself has yet to tell the Court a single fact about his *own* professional or educational background.

Romig relies heavily on out-of-circuit authority—chiefly, cases from the Southern District of New York—in opposing the Terran Investor Group's appointment. Among other cases, Romig cites *Varghese v. China Shenghuo Pharms. Holdings, Inc.*, 589 F. Supp. 2d 388 (S.D.N.Y. 2008), in which the court considered five factors in assessing the cohesiveness of a group of unrelated investors: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id.* at 392. Yet even assuming *arguendo* that this Court were to apply the *Varghese* factors, the Terran Investor Group would still readily pass muster:

As to the first factor, two of the group's four members have a pre-litigation relationship (being a married couple), while all four members did speak with one another and exchange

contact information well in advance of the lead plaintiff motion deadline.  Regarding the second factor, the Terran Investor Group has demonstrated a meaningful degree of involvement in the litigation to date.  Again, its members individually determined that they wished to seek leadership roles in this litigation, then opted to seek appointment jointly as co-lead plaintiffs after participating in a conference call with one another and their counsel.  The group's members exchanged contact information and provided a detailed joint declaration attesting to their understanding of the lead plaintiff role and their readiness to shoulder it jointly.  It is unclear how the group's members could have been any more involved in the litigation than they have been thus far.  The Terran Investor Group's members have in fact demonstrated a greater degree of engagement in this litigation than Romig, who—after two rounds of briefing—has still provided the court with no information about himself whatsoever or otherwise demonstrated that he is meaningfully engaged in this matter.  In fact, the filing of error-laden motion papers on his behalf indicates that his engagement may be minimal.  Dkt. No. 20 at 14-15.

Regarding the third factor, the Terran Investor Group's members have, in their Joint Declaration, attested under penalty of perjury to their "shared interest in prosecuting the case in a collaborative and likeminded manner" and to their readiness to "satisfy [their] fiduciary obligations to the Class by, among other steps, conferring with each other and with our counsel regarding litigation strategy and other matters, and reviewing and authorizing the filing of important litigation documents."  Dkt. No. 10-6 ¶¶ 7, 9.  Although Romig claims that "nothing in the Joint Declaration detail[s] how the group decided to collaborate" (Dkt. No. 21 at 3), the Joint Declaration belies Romig's mischaracterization:

> We each determined that we could maximize the Class's recovery by pooling our respective resources and experience by jointly seeking appointment as Co-Lead Plaintiffs.  After consulting with our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs, and subsequently approved the filing

of a joint motion seeking our appointment as Co-Lead Plaintiffs. We agree that our collective resources and our ability to engage in joint decision-making will materially benefit and advance the interests of the Class in this case.

Regarding the fourth factor, the Terran Investor Group's members have demonstrated their sophistication.  They have attested to their professional and educational backgrounds.  As noted *supra*, there is no legal basis for Romig to equate "sophistication" with accounting or business experience.  As noted *supra*, Romig himself has failed to demonstrate his own "sophistication," having failed to disclose his own experience, and how it would qualify him to supervise this litigation more effectively than the members of the Terran Investor Group. Moreover, Romig's error-riddled motion papers do not make his attacks on the sophistication of other litigants more credible.  In short, Romig asks the Court to apply a standard that he himself would not meet.  Finally, with respect to the fifth factor, each of the group's members has attested under penalty of perjury that he or she chose to work with the group's designated counsel, Pomerantz and Wohl Fruchter, to understanding each firm's respective role in this litigation, and to a readiness to supervise counsel's efforts to ensure this Action is "prosecute[d] in an efficient, cost-effective manner".  *See* Dkt. No. 10-6 ¶¶ 1, 6-7, 9, 14-15.  Romig has given no reason that the Court should not credit the group's attestations.

Romig challenges the Terran Investor Group's retention of Wohl Fruchter as additional counsel, but there is no provision in the PSLRA prohibiting lead counsel from associating with additional counsel to assist in the prosecution of securities class actions.  *Hunt v. Bloom Energy Corp.*, No. 19-CV-02935-HSG, 2021 WL 1110260, at *1 (N.D. Cal. Mar. 23, 2021). Accordingly, courts nationwide have long authorized additional counsel to work alongside lead counsel in complex federal securities fraud cases.  *See, e.g., In re Block, Inc. Sec. Litig.,* No. 22-CV-8636 (RA), 2024 WL 639470, at *2 (S.D.N.Y. Feb. 15, 2024) (referencing additional

6

counsel); *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, No. 20-CV-00054-SPF-JFJ, 2022 WL 377415, at *1 (N.D. Okla. Jan. 7, 2022) (same); *In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *1 (E.D. Pa. Jan. 25, 2016) (same); *Johnson v. OCZ Tech. Grp., Inc.*, No. CV 12-05265 RS, 2013 WL 75774, at *3 (N.D. Cal. Jan. 4, 2013) (same); *Ansfield v. Omnicare, Inc.*, No. CV 11-173-DLB-CJS, 2012 WL 12924531, at *5 (E.D. Ky. Mar. 12, 2012) (same).

Here, Wohl Fruchter is a small securities class action boutique consisting of two partners that has successfully litigated securities class actions nationwide since 2011 (*see* Reply Declaration of Jayne A. Goldstein in Further Support of Motion ("Goldstein Decl."), Ex. 1), and has frequently worked with Pomerantz as either co-lead counsel or additional counsel (*see id.* highlighted cases at *2-5).  Indeed, after being appointed co-lead counsel under the PSLRA by the Honorable Rodolfo A. Ruiz II of this District in *Vargas v. Citrix Systems, Inc. et al.*, Case No. 22-cv-62327-RAR (S.D. Fla.) ("*Citrix* Action"), a securities class action under Section 14(a) of the Exchange Act, Pomerantz and Wohl Fruchter recently secured Judge Ruiz's approval of a settlement of the *Citrix* Action for $17.5 million.  *See* Goldstein Decl., Exs. 2, 3, 4 at p. 1.

In this action, Wohl Fruchter would be working with Pomerantz as additional counsel, and to that end would assign no more than one attorney to the case—named partner Joshua E. Fruchter—to perform senior-level tasks at the direction and under the supervision of Pomerantz to avoid any duplication of effort. (*See* Dkt. No. 10-6 ¶ 15). As a practical matter, such tasks would primarily consist of work on key pleadings and motions that takes advantage of Mr. Fruchter's over 30 years of experience as a successful litigator.  *See, e.g.*, *Vargas v. Citrix Systems, Inc. et al.*, Case No. 22-cv-62327-RAR (S.D. Fla.), Dkt. No. 34 at 73 (amended complaint prepared by Pomerantz and Wohl Fruchter); *id.*, Dkt. No. 45 at 31 (winning brief

opposing motion to dismiss prepared by Pomerantz and Wohl Fruchter); *see also* Goldstein Decl., Ex. 1 at *7 (experience of Joshua E. Fruchter).

In the end, although Romig couches his argument in terms of the *Varghese* factors, what Romig actually seeks—as he acknowledges elsewhere in his brief—is an outright "prohibition" on permitting groups of unrelated investors to seek appointment jointly as Co-Lead Plaintiffs. *See* Dkt. No. 21 at 6 n.2.  There is no basis in the PSLRA or federal jurisprudence for such a rigid rule.  Having robustly demonstrated its adequacy, the Terran Investor Group is precisely the type of group that courts have routinely appointed to serve as Lead Plaintiffs in PSLRA actions.

## II.    ROMIG IS INADEQUATE, ATYPICAL, AND SUBJECT TO DISQUALIFYING UNIQUE DEFENSES

As set forth at length in the Terran Investor Group's opposition brief, Romig's motion brief describes him as pursuing damages in this litigation solely in connection with claims that were assigned to him yet fails to provide the purported assignment of claims or even identify the purported assignor.  The absent assignment makes Romig's Certification facially false to the extent it describes Class Period trades by Romig that were apparently executed by an unknown assignor, and also raises disqualifying questions as to Romig's Article III standing to pursue claims in this litigation. (Dkt. No. 20 at 14-20).

In his own opposition brief, Romig not only fails to clarify anything with respect to the missing assignment, but rather muddies the waters even further.  While his initial motion brief specifically contained language indicating that Romig did not invest in Terran Orbital securities himself but only pursued recovery of investment losses "through . . . assigned claims" (Dkt. No. 13-1 at 7), his opposition brief contradictorily states that "Romig traded individually ***on behalf of himself.***"  Dkt. No. 21 at 2 (emphasis added).  Clearly at least one of these statements must be incorrect.  The contradictions in Romig's submissions to date raise two likely possibilities.  The

first possibility is that Romig's representation in his motion brief was correct—*i.e.*, that Romig pursues recovery in this litigation solely in connection with claims that were assigned to him—in which case his failure to provide any assignment(s) and the litany of issues raised by this failure disqualify him from serving as Lead Plaintiff on multiple grounds, as discussed in detail in the Terran Investor Group's opposition. *See generally* Dkt. No. 20 at 14-19. In this scenario, Romig's reference in his opposition brief to having "traded individually on behalf of himself" is a false statement.

The second possibility is that Romig's representation in his opposition brief was accurate—*i.e.*, that he pursues claims in this litigation in connection with his own purchases of Terran shares—in which case the reference to assignments of claims in Romig's moving brief was presumably made in error. Under this scenario, Romig has demonstrated his inadequacy by failing to submit accurate and reliable papers. *See*, *e.g.*, *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) ("Minor or not . . . the errors 'nonetheless speak to a level of carelessness' that rightly call into doubt [movant's] adequacy to be lead plaintiff.") (quoting *Plaut v. Goldman Sachs Grp., Inc.*, No. 18 Civ. 12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019)).

Anticipating that Romig may seek to characterize an erroneous reference to an assignment as a mere "scrivener's" or "typographical error", the Court should disregard any such efforts to trivialize the consequence of this error. Whatever the reason for the error, Romig's reference to an assignment in his motion brief implicates points as critical as Romig's Article III standing and his basic compliance with the PSLRA's Certification requirement. Clearly, the Court and the other parties to this litigation should be able to rely on the accuracy of Romig's submissions, rather than spending time and resources addressing points raised in Romig's

submissions, only to learn subsequently that Romig raised those points in error.  Nor should other litigants be responsible for alerting Romig to his own mistakes.  *See*, *e.g.*, *DraftKings*, 2021 WL 5282006, at *6, *9 (denying lead plaintiff motion, finding "[t]he slovenliness of [movant's] submissions [to be] undoubtedly concerning" and noting that "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place.").  Coupled with the fact that, after two rounds of briefing, Romig still has not told the Court a single thing about himself or provided any specific attestations regarding his understanding of this litigation and his role in it, these glaring errors in his motion papers do not demonstrate a meaningful degree of engagement with this litigation. *See Haideri v. Jumei International Holding Limited*, No. 20-cv-02751-EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (finding inadequate under Rule 23 movants who demonstrated a "lack of commitment to the litigation, including their intent to monitor the litigation.").  This clearly falls well short of the Rule 23 adequacy standard.

## CONCLUSION

For the foregoing reasons, the Terran Investor Group respectfully requests that the Court issue an Order: (1) appointing the Terran Investor Group as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel and Miller Shah as Liaison Counsel for the Class.

10

Dated:  December 17, 2024

Respectfully submitted,

**MILLER SHAH LLP**

By: */s/ Jayne A. Goldstein*
Jayne A. Goldstein
Nathan C. Zipperian
2103 N. Commerce Parkway
Ft. Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
jagoldstein@millershah.com
nczipperian@millershah.com

*Counsel for the Terran Investor Group and*
*Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Thomas H. Przybylowski
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Counsel for the Terran Investor Group and*
*Proposed Lead Counsel for the Class*

**WOHL & FRUCHTER LLP**
Joshua E. Fruchter
(*pro hac vice* application forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Additional Counsel for the Terran Investor Group*

11

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2024, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

/s/ Jayne A. Goldstein
Jayne A. Goldstein

12