**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CV-81191 ROSENBERG / REINHART**

STEVEN VERZWYVELT, JESSE RAMIREZ,
MICHAEL O'NEILL, and JILL O'NEILL,
individually and on behalf of all others
similarly situated,

     Plaintiffs,

    v.

TERRAN ORBITAL CORPORATION,
MARC H. BELL, MATHIEU RIFFEL, GARY
A. HOBART, and STRATTON SCLAVOS,

     Defendants.

CLASS ACTION

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT STRATTON SCLAVOS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

ARGUMENT................................................................................................................................. 1

I.  PLAINTIFFS FAIL TO IDENTIFY A MATERIALLY FALSE OR
    MISLEADING STATEMENT BY SCLAVOS ................................................................ 1

    A.  The Challenged Sclavos Statement is Immaterial and Inactionable Puffery .......... 1

    B.  The Challenged Sclavos Statement is Also an Inactionable Opinion ..................... 3

    C.  The Challenged Sclavos Statement is Also Protected as Forward-Looking
        Under the Safe Harbor ............................................................................................ 6

    D.  Plaintiffs Cannot Save their Claim Against Sclavos Based on Bell's
        Alleged False Statement .......................................................................................... 7

II. PLAINTIFFS FAIL TO IDENTIFY ALLEGATIONS PROVIDING A STRONG
    INFERENCE THAT SCLAVOS ACTED WITH SCIENTER ......................................... 8

III. PLAINTIFFS' CONTROL PERSON CLAIM ALSO FAILS ........................................... 9

CONCLUSION.............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Brown v. Enstar Grp., Inc.*,
  84 F.3d 393 (11th Cir. 1996) ............................................................................................ 10

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) .......................................................................................... 9

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) ................................................................................. 2, 6, 7

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................................. 8

*Cutsforth v. Renschler,*
  235 F.Supp.2d 1216 (M.D. Fla. 2002)............................................................................... 3

*Hampton v. Aqua Metals, Inc.*,
  2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) ................................................................. 8

*Harper v. O'Neal*,
  746 F. Supp. 3d 1360 (S.D. Fla. 2024) ........................................................................... 10

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
  843 F.3d 1257 (11th Cir. 2016) ..................................................................................... 8, 9

*In re Jan. 2021 Short Squeeze Trading Litig.*,
  620 F. Supp. 3d 1231 (S.D. Fla. 2022) ............................................................................. 9

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011).......................................................................................................... 8

*Kosowsky v. Icahn Enters. L.P.*,
  748 F. Supp. 3d 1303 (S.D. Fla. 2024) ............................................................................. 9

*Laperriere v. Vesta Ins. Grp., Inc.*,
  526 F.3d 715 (11th Cir. 2008) ........................................................................................ 10

*Mogensen v. Body Cent. Corp.*,
  15 F. Supp. 3d 1191, 1199 (M.D. Fla. 2014)..................................................................... 3

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)................................................................................................... 4, 5, 6

*Police & Fire Ret. Sys. of City of Detroit v. Axogen, Inc*,
    2020 WL 13547449 (M.D. Fla. Apr. 21, 2020) ........................................................................... 9

*Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*,
    2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) ........................................................................... 8

**INTRODUCTION**

Defendant Stratton Sclavos respectfully files this reply brief in support of the Defendants' motion to dismiss the First Amended Class Action Complaint (the "Amended Complaint") with prejudice.  Sclavos joins in full and incorporates the arguments advanced by counsel for Terran Orbital ("Terran") and his fellow individual defendants in their reply brief ("Terran's Reply").  Sclavos files this separate reply brief to highlight Plaintiffs' conspicuous failure to address the Amended Complaint's glaring deficiencies as to Sclavos.  Plaintiffs instead attempt to sidestep those shortcomings as to falsity and scienter through mischaracterization and obfuscation.

**ARGUMENT**

**I.    PLAINTIFFS FAIL TO IDENTIFY A MATERIALLY FALSE OR MISLEADING STATEMENT BY SCLAVOS**

Plaintiffs claim to challenge 19 statements that they allege "materially misrepresented [Terran's] (i) 2023 revenue outlook; (ii) overall liquidity and need to raise capital; and (iii) dependence on the Rivada Contract."  Opp. at 10–11; *see also* Amended Complaint ("AC") ¶ 134 (same).  Only *one* of those statements is alleged to have been made by Defendant Sclavos, an independent director on Terran's Board.  But Plaintiffs utterly fail to allege (or argue) that Sclavos' lone statement was false or misleading.  To wit, the statement does not concern *any* of the subject areas about which Plaintiffs claim investors were misled.

**A.    The Challenged Sclavos Statement is Immaterial and Inactionable Puffery**

The lone Sclavos statement that Plaintiffs challenge is alleged to have been made at an October 26, 2023 virtual town hall attended by Defendants Marc Bell and Sclavos.  AC ¶ 143.  It reads as follows:

> *The independent directors believe that under Marc's continued leadership Terran Orbital **will soon achieve escape velocity** in this rapidly growing market for small satellites and busses.*

AC ¶ 144 (emphasis added).[1]  That Plaintiffs are pursuing a fraud case against Sclavos based on this statement is astonishing.  The statement was obviously a playful reference to Terran's line of business (manufacturing satellites) that expressed, at most, nothing more than Sclavos' general optimism about Terran's growth potential in a growing market.  It provided *no* cognizable information about Terran's revenue outlook, liquidity, or customer contracts.  It was essentially marketing speak—a "big claim with little substance"—and therefore cannot support a securities fraud claim because it is immaterial puffery.  *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318–19 (11th Cir. 2019) ("[G]eneralized, vague, nonquantifiable statements of corporate optimism" such as "America Runs on Dunkin" are "quintessential puffery" and therefore not actionable).

It is unsurprising, then, that Plaintiffs conspicuously fail to address the content of the challenged Sclavos statement in their opposition brief.  Instead, Plaintiffs obfuscate the issue by lumping the challenged Sclavos statement into string cites with other challenged statements, arguing that they all "expressly advised that [Terran] could survive on cash flows from its operations until they turned 'positive' in the second half of 2024 and, thus, became self-sustaining."  Opp. at 12 (citing the challenged Sclavos statement and four other statements).  Plaintiffs further mischaracterize the challenged Sclavos statement as somehow "express[ing] … comfort with Terran Orbital's liquidity or stat[ing] that [Terran] had sufficient cashflows to reach 'breakeven' in 2024."  Opp. at 14 (citing the challenged Sclavos statement and seven other statements).  But the challenged Sclavos statement expressed *none of those things*.  Plaintiffs cannot call an apple an orange in their opposition brief and thereby make it so.

---

[1] The Amended Complaint makes clear that only this portion of Sclavos' alleged statements at the town hall event is alleged to be materially false and misleading.  AC ¶¶ 134, 144.

The reality is that the challenged Sclavos statement was immaterial puffery. Not only was it devoid of any tangible information about Terran's financial metrics or customer contracts, but it was clearly a playful turn of phrase meant to communicate nothing more than general optimism about Terran's growth potential. As such, no reasonable investor would view the statement as significantly altering the "total mix" of information available.[2] *Cf. Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1199, 1212–13 (M.D. Fla. 2014) (holding that statements such as, "we believe [that operational initiatives underway] will enhance our ability to achieve our long-term growth objectives", "we believe that our overall sales results continue to validate our future growth potential", and "[we] ... remain confident in our long-term growth outlook" constituted immaterial and inactionable puffery); *Cutsforth v. Renschler,* 235 F.Supp.2d 1216, 1251 (M.D. Fla. 2002) (holding that the statement "With PharMerica's first quarter successes, we are well-positioned to move forward with efforts to establish PharMerica as the nation's premier provider of geriatric pharmacy services" was "devoid of meaningful substance" and inactionable as "nothing more than vague, indefinite puffing"). For this reason alone, the Amended Complaint must be dismissed against Sclavos.

## B.    The Challenged Sclavos Statement is Also an Inactionable Opinion

In addition to constituting puffery, the challenged Sclavos statement—which begins with the phrase "The independent directors *believe* …" (emphasis added)—expresses nothing more than Sclavos' *opinion* about Terran's growth potential. *See* AC ¶ 144. Because Plaintiffs fail to

---

[2]    Sclavos' reference to "escape velocity" is also peculiar and arguably incongruous with Terran's line of business. As defined in Wikipedia, "escape velocity" is "the minimum speed needed for an object to escape from contact with or orbit of a primary body." *See* Wikipedia, "Escape Velocity," *available at* https://en.wikipedia.org/wiki/Escape_velocity (last visited June 14, 2025). Accordingly, whatever one makes of Sclavos' statement, it cannot be understood as an unambiguous representation concerning any particular aspect of Terran's business, much less a material representation.

allege facts sufficient to establish any of the exceptions for opinion statements under the Supreme Court's decision in *Omnicare*, the Amended Complaint must also be dismissed as to Sclavos for this reason.

To begin, Plaintiffs do not even attempt to argue that the Amended Complaint alleges facts suggesting Sclavos' opinion was anything other than sincerely held.  Nor do Plaintiffs argue that the statement included an embedded statement of fact that could theoretically be proven untrue.  *See* Opp. at 13–14.  Plaintiffs therefore concede that they have failed to allege that the statement constitutes an untrue statement of fact.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184–86 (2015) (holding that false statements liability can attach to opinions "only if the speaker did not hold the belief she professed [or] if the supporting fact she supplied were untrue").

Plaintiffs instead argue that the challenged Sclavos statement is nevertheless actionable on an omission theory because Sclavos' opinion purportedly did not "fairly align" with information in his possession at the time.  *See* Opp. at 14.  This argument is meritless.  For one, Plaintiffs fail to allege what material fact Sclavos supposedly omitted that would have rendered his opinion misleading.  *See Omnicare*, 575 U.S. at 194 (holding that a plaintiff "must identify particular (and material) facts going to the basis for the [defendant's] opinion—facts about the inquiry the [defendant] did or did not conduct or the knowledge [defendant] did or did not have—whose omission makes the statement at issue misleading to a reasonable person reading the statement fairly and in context.").  In addition, even accepting *arguendo* Plaintiffs' characterization of Sclavos' "escape velocity" statement as an "optimistic" and unambiguous statement about Terran's revenue outlook, liquidity, or customer contracts, numerous contemporaneously disclosed facts provide a more-than-sufficient basis for such optimism as of

-4-

October 26, 2023.  Those facts—none of which Plaintiffs' challenge as false or misleading—include:

- Announcements that same week of over $160 million in new contract awards across three programs.  *See* Ex. 11 to Mot. to Dismiss at 6 (Dkt. #58-11) (transcript of October 26, 2023 town meeting); *see also* AC ¶ 76 (summarizing portions of same transcript).

- Terran's work on "approximately 80 opportunities for more than 2,800 satellite buses for approximately 40 different customers valued over at $2.7 billion."  Ex. 11 to Mot. to Dismiss at 6.

- Terran's expectation that it would have "over $70 million of cash on hand" at the close of business that same day (October 26, 2023), which "far exceed[ed] [Terran's] June 30th closing cash number of $48.5 million."  *Id.* at 7; AC ¶ 143.

- Terran's receipt of "$5 million to launch [Rivada's] program" and Rivada's statement to Terran that Terran "should still expect to receive approximately $180 million" by the end of 2023.  Ex. 11 to Mot. to Dismiss at 7; AC ¶ 76.

- Terran's anticipation that its forthcoming revised revenue guidance for 2023, while being revised downward, would "still reflect a material increase over last year's revenues."  Ex. 11 to Mot. to Dismiss at 8.[3]

Plaintiffs nevertheless argue that somehow Sclavos' opinion—that Terran "will soon achieve escape velocity"—did not fairly align with the information he allegedly possessed because "others raised … liquidity concerns" at Board meetings in the months preceding the October town hall event.  *See* Opp. at 14.  But even if such alleged concerns were pertinent to Sclavos' vague opinion statement about Terran's growth potential, Sclavos cannot be held liable for his opinion statement simply because he allegedly failed to disclose "some fact cutting the other way."  *See Omnicare*, 575 U.S. at 189.  The Supreme Court has made clear that a "reasonable investor does not expect that every fact known to a [speaker] supports its opinion statement."  *Id.* at 190.  Rather, context matters, including all the facts disclosed

---

[3]      As noted in the Amended Complaint, Terran's third quarter financial results were released less then three weeks later, and those results reflected higher revenue, higher gross profit, and higher gross margin over the same period the previous year.  AC ¶ 79.  Similarly, Terran's full year results for 2023 reflected record revenue and record gross profit.  AC ¶ 99.

contemporaneously therewith.  *See id.* at 196 (providing that analysis of whether an "opinion is misleading must address the statement's context," which includes whatever facts were provided about the subject matter at issue, as well as "any other hedges, disclaimers, or qualifications").  Here, not only were a multitude of facts disclosed that supported Sclavos' alleged optimistic opinion, numerous facts were also disclosed that highlighted the Board's ongoing review of the potential need for capital infusions.  To wit, the transcript from the town hall event reflects that, immediately before Sclavos spoke, Bell disclosed that management had been "informing the Board on a wide variety of strategic options that might be advantageous for the company to pursue as it looks to *finance its operations*, win business, and execute on its overall strategy."  Ex. 11 to Mot. to Dismiss at 9 (emphasis added).  Bell further shared that the Board was receiving "expert advisory services" as to capital raises from "investment banking firm Jefferies."  *Id.*  These disclosures wholly undermine Plaintiffs' claim that the challenged opinion statement was somehow misleading for lacking a reasonable basis.

### C.     The Challenged Sclavos Statement is Also Protected as Forward-Looking Under the Safe Harbor

The challenged Sclavos statement is undeniably forward-looking and therefore also protected by the safe harbor.  Through their silence in the opposition brief, Plaintiffs implicitly concede that the challenged Sclavos statement is about the future: it provides that Sclavos and his fellow independent directors believe that Terran Orbital "*will soon* achieve escape velocity." AC ¶ 144 (emphasis added); *see Carvelli*, 934 F.3d at 1324 (defining a forward-looking statement as a "prediction, projection, or plan").  Contrary to Plaintiffs' conclusory summary characterization, nothing about the challenged Sclavos' statement represented present facts or had a present-tense component regarding "Rivada, financing, [or] cash flows."  *See* Opp. at 15–17.  (Indeed, the challenged Sclavos statement represented nothing about those issues at all,

-6-

regardless of the tense.)  The challenged Sclavos statement was also accompanied by meaningful cautionary language.[4]

Plaintiffs' conclusory statement that "Sclavos knew the disputed statements were false or misleading" has no basis in the allegations and cannot save the day for them.  *See* Opp. at 17. The Amended Complaint contains no allegations suggesting Sclavos "knew" that Terran would not "soon achieve escape velocity" (whatever that might mean).  And, as discussed above, the Amended Complaint and the information in the company filings it cites (the accuracy of which Plaintiffs do not challenge) provide multiple bases for general optimism in October 2023. Plaintiffs' attempt to extricate the challenged Sclavos statement from the safe harbor must fail.

### D. Plaintiffs Cannot Save their Claim Against Sclavos Based on Bell's Alleged False Statement

In a footnote, Plaintiffs' try to stave off dismissal by arguing that Sclavos could somehow be held liable because he allegedly "failed to correct" an alleged false statement made by Bell during the town hall event.  Opp. at 19, n.6.  That Plaintiffs relegated this argument to a footnote (and alleged it nowhere in the Amended Complaint) is telling, because it is unsupported in the law.

As an initial matter, for all the reasons set forth in the Defendants' motion to dismiss and Terran's Reply, Plaintiffs fail to sufficiently allege that the relevant statement by Bell (AC ¶ 143)

---

[4]     As the Amended Complaint makes clear, the investing public understood cash liquidity was an important metric for Terran. *See, e.g.*, AC ¶ 7 (alleging that investors and analysts pressed management about Terran's liquidity).  And the cautionary language that accompanied (and was incorporated into) the challenged Sclavos statement warned that Terran's receipt of financing and contract payments in the future were uncertain. *See* Ex. 11 to Mot. to Dismiss at 5; Mot. to Dismiss at 13 (excerpting cautionary language regarding financing and customer payments); *cf. Carvelli*, 934 F.3d at 1327 (affirming application of safe harbor where defendant's ongoing regulatory actions were "no secret" and forward-looking statements were accompanied by disclosures about risks the company faced regarding regulatory actions).

was in any way false, misleading, and/or otherwise actionable.  Second, the principal case the Plaintiffs cite for their "failure to correct" theory is an unreported decision from 2009 (*Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*, 2009 WL 3853592, at \*6 (M.D. Fla. Mar. 30, 2009)) that was issued *before* the Supreme Court's landmark decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).  In *Janus*, the Supreme Court held that, for purposes of false statements liability under Rule 10b-5 (the theory Plaintiffs advance in this matter), "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Id.* at 142; *see also In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272 (11th Cir. 2016) ("The Supreme Court has held that a defendant must have 'made' the statement to be liable for a violation of Rule 10b-5(b).").  Because Sclavos is not alleged to have "ultimate authority" over Bell's statement, *Janus* squarely forecloses liability on Plaintiffs' "failure to correct" theory.  *See, e.g.*, *Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2020 WL 6710096, at \*17 (N.D. Cal. Nov. 16, 2020) (holding that *Janus* forecloses plaintiff's contention, based on same pre-*Janus* precedent cited in *Rosky*, that an officer can be held liable simply for failing to correct another individual's alleged false statement); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1070–71 (N.D. Cal. 2012) (holding that the Board Chairman could not be held liable under *Janus* for statements of other individual defendants, including those made during analyst or investor calls).

## II.    PLAINTIFFS FAIL TO IDENTIFY ALLEGATIONS PROVIDING A STRONG INFERENCE THAT SCLAVOS ACTED WITH SCIENTER

The Amended Complaint must also be dismissed as to Sclavos because it is wholly devoid of allegations sufficient to establish a strong inference that Sclavos acted with scienter. Plaintiffs' opposition brief cites *no* allegations stated with particularity as to Sclavos' alleged

scienter, instead relying only on general allegations that the Individual Defendants (i) allegedly knew, or were severely reckless in not knowing, that their challenged statements were false and misleading and (i) allegedly had a general motive to ensure Terran's "survival." *See* Opp. at 20–30; AC ¶ 188, 210.  But, for the reasons discussed above, Plaintiffs fall far short of alleging that Sclavos made a false or misleading statement, and "financial desperation, alone, is too generalized to create a particularized inference of scienter." *In re Jan. 2021 Short Squeeze Trading Litig.*, 620 F. Supp. 3d 1231, 1253 (S.D. Fla. 2022); *see also Police & Fire Ret. Sys. of City of Detroit v. Axogen, Inc*, 2020 WL 13547449, at *17 (M.D. Fla. Apr. 21, 2020) (holding that allegations of motive and opportunity are insufficient alone to allege scienter) (*citing Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1285 (11th Cir. 1999)).  Plaintiffs otherwise identify *no* allegations of individualized motive as to Sclavos (an independent board member), including no individualized allegations of personal financial gain.  Nor do their confidential witness allegations concern Sclavos in any way.  The conspicuous dearth of individualized scienter allegations is yet another reason that dismissal is required.  *See Kosowsky v. Icahn Enters. L.P.*, 748 F. Supp. 3d 1303, 1322 (S.D. Fla. 2024) (holding scienter allegations insufficient where "Plaintiffs fail to clearly distinguish how each Individual Defendant acted purposefully or with severe recklessness").

## III.   PLAINTIFFS' CONTROL PERSON CLAIM ALSO FAILS

Finally, Plaintiffs' control person claim under Section 20(a) of the Exchange Act must also be dismissed as to the Sclavos.  For one, Plaintiffs fail to plead a primary violation.  In addition, Plaintiffs fail to allege that Sclavos "exercised actual power or control over" any alleged primary violator, as required.  *See In re Galectin*, 843 F.3d at 1276 (noting that control is defined by the SEC as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting

securities, by contract, or otherwise") (internal citations omitted); *see also Brown v. Enstar Grp., Inc.*, 84 F.3d 393, 396 (11th Cir. 1996) ("In this circuit, a defendant is liable as a controlling person under section 20(a) if he or she 'had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws ... [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.'") (internal citation omitted).

Whether a defendant exercised actual control over a primary violator depends "on the particular factual circumstances of each case," *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 723 (11th Cir. 2008), but "officer or director status alone does not constitute control," *Harper v. O'Neal*, 746 F. Supp. 3d 1360, 1373 (S.D. Fla. 2024).  Here, Plaintiffs make no allegations suggesting that Sclavos participated in the day-to-day affairs of the corporation and/or had the power to control corporate actions.  Instead, Plaintiffs allege that it was only "Terran Orbital's most senior *executives*" who had "direct involvement in the day-to-day operations of the Company" and who "conducted and participated, directly or indirectly, in the conduct of Terran Orbital's business affairs."  AC ¶ 251 (emphasis added).  Sclavos was not an executive at Terran; he was an independent Board member.  AC ¶ 20.  The Section 20(a) control person claims against Sclavos must be dismissed for this independent reason.

## CONCLUSION

For the reasons set forth above, Defendant Sclavos respectfully requests that the Court dismiss the Amended Complaint with prejudice.

Dated: June 16, 2025

Respectfully submitted,

*/s/ Aaron S. Weiss*

Aaron S. Weiss (Fla. Bar No. 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Ave., Ste. 1200
Miami, Florida 33136
Telephone: (305) 530-0050

Peter L. Welsh (admitted *pro hac vice*)
James R. Drabick (admitted *pro hac vice*)
peter.welsh@ropesgray.com
james.drabick@ropesgray.com
Ropes & Gray LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 235-7865

*Counsel for Defendant Stratton Sclavos*