**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CV-81191 ROSENBERG / REINHART**

| | |
|---|---|
| STEVEN VERZWYVELT, JESSE RAMIREZ, MICHAEL O'NEILL, and JILL O'NEILL, individually and on behalf of all others similarly situated, <br><br>    Plaintiffs, <br><br>    v. <br><br> TERRAN ORBITAL CORPORATION, MARC H. BELL, MATHIEU RIFFEL, GARY A. HOBART, and STRATTON SCLAVOS, <br><br>    Defendants. | CLASS ACTION |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT ........................................................................................................................2

    I.      PLAINTIFFS' OPPOSITION DOES NOT IDENTIFY PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER .............. 2

          A.     Plaintiffs Have No Plausible Motive Allegations ..................................... 2

          B.     Terran's Proxy Statement Does Not Demonstrate Scienter ....................... 4

          C.     Plaintiffs Cannot Establish Scienter Through "Group Pleading" ............... 5

          D.     Conclusory "Core Operation" Allegations Do Not Satisfy the Reform Act .............................................................................................. 6

          E.     Plaintiffs' Remaining Scienter Arguments Are Unavailing ...................... 7

    II.     PLAINTIFFS' FAIL TO SHOW ACTIONABLE FALSE STATEMENTS ......... 9

          A.     The Amended Complaint Fails to Establish That the Alleged Misstatements Were False or Misleading When Made .............................. 9

          B.     Defendants' Forward-Looking Characterizations of and Opinions About Terran's Accurately Disclosed Financial Data Are Not Actionable ............................................................................................ 11

                1.     Plaintiffs Cannot Attribute All Statements to All Defendants ...... 11

                2.     Defendants' Opinions Are Not Actionable Under *Omnicare* ....... 12

                3.     The Safe Harbor Protects Defendants' Forward-Looking Statements .................................................................................. 13

                4.     Defendants' Optimism Is Not Actionable .................................... 14

CONCLUSION ...................................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**

*Asher v. Baxter Int'l, Inc.*,
377 F.3d 727 (7th Cir. 2004) ..................................................................................................14

*Barrie v. Intervoice–Brite, Inc.*,
409 F.3d 653 (5th Cir. 2005) ..................................................................................................12

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) .........................................................................................14, 15

*Cheney v. Cyberguard Corp.*,
2000 WL 1140306 (S.D. Fla. July 31, 2000), *modified on reconsideration*,
2001 WL 1916564 (S.D. Fla. Mar. 21, 2001)...........................................................................9

*City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*,
746 F. Supp. 3d 1395 (S.D. Fla. 2024) ..............................................................................6, 15

*Druskin v. Answerthink, Inc.*,
299 F. Supp. 2d 1307 (S.D. Fla. 2004) ....................................................................................3

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
594 F.3d 783 (11th Cir. 2010) ................................................................................................14

*In re Flowers Foods, Inc. Sec. Litig.*,
2018 WL 1558558 (M.D. Ga. Mar. 23, 2018)........................................................................5, 7

*Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*,
675 F.3d 1047 (7th Cir. 2012) ................................................................................................12

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012)......................................................................................12

*Hoffman v. Authentec, Inc.*,
2009 WL 3109860 (M.D. Fla. Sept. 24, 2009)........................................................................13

*Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*,
620 F.3d 137 (2d Cir. 2010)......................................................................................................5

*In re Jan. 2021 Short Squeeze Trading Litig.*,
620 F. Supp. 3d 1231 (S.D. Fla. 2022) ...............................................................................3, 11

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)..................................................................................................................12

*Kosowsky v. Icahn Enters. L.P.*,
748 F. Supp. 3d 1303 (S.D. Fla. 2024) ................................................................................6, 7

*Meyer v. St. Joe Co.*,
  2012 WL 94584 (N.D. Fla. Jan. 12, 2012), *aff'd sub nom. Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ...................................................................................4

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ................................................................................2, 3

*Murdeshwar v. Search Media Holdings Ltd.*,
  2011 WL 7704347 (S.D. Fla. Aug. 8, 2011)................................................................6

*Phillips v. Sci.-Atlanta, Inc.*,
  374 F.3d 1015 (11th Cir. 2004) ..................................................................................6

*Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*,
  111 F. Supp. 3d 1336 (S.D. Fla. 2015) ....................................................................6, 8

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
  2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) ...........................................................15

*SEC v. GlobeTel Commc'ns Corp.*,
  2008 WL 11333153 (S.D. Fla. Nov. 12, 2008)...........................................................6

*SEC v. Merchant Cap., LLC*,
  483 F.3d 747 (11th Cir. 2007) ..................................................................................11

*SEC v. Torchia*,
  183 F. Supp. 3d 1291 (N.D. Ga. 2016) ....................................................................14

*Shafer v. Glob. Payments, Inc.*,
  2024 WL 2789447 (N.D. Ga. Mar. 29, 2024)...........................................................12

*Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp*,
  600 F. Supp. 3d 1189 (N.D. Ala. 2021)....................................................................11

*Sides v. Simmons*,
  2007 WL 2819371 (S.D. Fla. Sept. 24, 2007) .........................................................5, 6

*In re Supreme Indus., Inc. Sec. Litig.*,
  2018 WL 2364931 (N.D. Ind. May 23, 2018) ..........................................................11

*Theodore v. Purecycle Techs., Inc.*,
  2023 WL 4035880 (M.D. Fla. June 15, 2023)..........................................................7, 8

*Theodore v. Purecycle Techs., Inc.*,
  2022 WL 20157415 (M.D. Fla. Aug. 4, 2022) .........................................................15

*Triton II, LLC v. Randazzo*,
  2019 WL 1777726 (S.D. Fla. Apr. 23, 2019) .............................................................5

*Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*,
  2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) ........................................................................12

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................................9, 15

Fed. R. Civ. P. 12(b)(6)...............................................................................................................15

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition **concedes** that Terran's SEC filings were accurate.  In those SEC filings, Terran disclosed its revenue, cost of sales, operating losses, available cash, the amount and due date of its outstanding debt obligations, and a going concern opinion issued by the Company's auditor.  Those filings, in turn, were consistent with the events described in the Proxy filed in connection with Lockheed Martin's acquisition of Terran.  As a result, Plaintiffs are left with a securities fraud class action premised on the theory that a handful of additional, off-the-cuff statements by Terran executives somehow negated hundreds of pages of truthful SEC disclosures and misled investors about Terran's financial issues.  This theory fails for several reasons.

*First*, Plaintiffs argue that Terran and its senior executives intentionally inflated the value of the Company's stock, but concede in the Opposition that the Amended Complaint lacks two of the most common and compelling indicators of fraudulent intent – there are no insider stock sales and no "confidential witnesses" who can speak to any Defendant's actual knowledge.

*Next*, Plaintiffs assert that inconsistencies between the challenged statements and the Proxy support an inference of scienter, but Plaintiffs fail to make fair apples-to-apples comparisons demonstrating that a challenged statement and a Proxy statement concern the same specific matter, rather than touch on the same broad topic, such as "liquidity" or "cash."  Instead, the Amended Complaint cherry-picks language to give the false impression that Defendants' unscripted statements in earnings calls addressed the same matters as statements in the Proxy.

*Finally*, Plaintiffs' reliance on "core operations" assertions and generic financial motives is insufficient.  The Eleventh Circuit has not recognized the "core operations" doctrine.  With respect to financial motives, the Opposition confirms that the Amended Complaint does not offer any unique motive beyond the generic financial motives that courts regularly find to be insufficient to plead scienter under the Reform Act's exacting standard.

1

The Opposition also confirms that Plaintiffs do not allege any actionable false or misleading statements. According to Plaintiffs, Defendants concealed that Terran needed, and at various points during the Class Period was actively seeking, to raise capital. Contradicting those assertions, the Opposition points to five different capital raising efforts that Terran pursued and disclosed in multiple SEC filings in March, May, September, and October 2023 and July 2024.

Similarly, Plaintiffs argue at length that Terran concealed the significance of the Rivada Contract and the risks to the Company's business if Rivada failed to perform. At the same time, Plaintiffs' Opposition points to multiple SEC filings by Terran expressly disclosing: the amount of the Rivada Contract; that Rivada was by orders of magnitude the Company's largest contract; and that Rivada might not be able to obtain financing to pay its obligations under the contract.

That leaves Plaintiffs challenging three types of statements: (i) forward-looking statements about the Company's future, the Rivada Contract, and the potential need for additional capital; (ii) opinions about the import of Terran's accurately disclosed financial data; and (iii) generically optimistic statements about the Company's ability to address potential cash needs. None of those statements is actionable; the Reform Act and Rule 9(b) require dismissal.

## ARGUMENT

**I. PLAINTIFFS' OPPOSITION DOES NOT IDENTIFY PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.**[1]

**A. Plaintiffs Have No Plausible Motive Allegations.**

The Opposition's motive allegations are conclusory for numerous reasons. *First*, Plaintiffs do not dispute that Defendants did not engage in any insider stock sales during the Class Period, which "weighs against inferring scienter." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1253

---

[1] The Opposition does not attempt to defend CWs 1, 3, and 4. As for CW2, the Opposition does nothing more than re-assert that he heard a second-hand rumor. Opp. at 24.

(11th Cir. 2008).  Here, the lack of stock sales, particularly by Bell, further demonstrates the weakness of Plaintiffs' argument because it is undisputed that Bell received less money in connection with the transaction than he lost on his Terran stock.  The payments Bell received in connection with the transaction totaled only approximately half of the amount he could have earned if he had sold his stock during the Class Period.

*Second*, Plaintiffs' assertion that Terran's "very survival hinged on constantly raising significant sums of new capital or finding a buyer" is far from the "unique and specific" motive claimed by Plaintiffs.  Opp. at 24–25.  Plaintiffs concede that Terran accurately disclosed its financial condition and need for capital to continue its business, *id.* at 14–15; *see also* Br. at 24–26, and it is illogical to rely on a disclosed fact as evidence of a motive to commit fraud.

*Third*, the Opposition does nothing to change the fact that Plaintiffs' core scienter theory is that Defendants committed fraud to earn money and raise capital.  Such generic motives are insufficient.  *See*, *e.g.*, *Druskin v. Answerthink, Inc.,* 299 F. Supp. 2d 1307, 1338 (S.D. Fla. 2004).  Plaintiffs rely on *In re Jan. 2021 Short Squeeze Trading Litigation*, 620 F. Supp. 3d 1231 (S.D. Fla. 2022) but misconstrue the holding.  There, the Court reasoned that "financial desperation, alone, is too generalized to **create** a particular inference of scienter," and that at best, it "contribute[s]" to scienter.  *Id.* at 1253 (emphasis in original).  Indeed, the Court found scienter because the "Complaint d[id] more than simply rely on [defendant's] financial desperation as a basis to infer scienter."  *Id.* at 1254.  The Amended Complaint here offers no similar allegations.

*Fourth*, the Opposition fails to bolster the scienter allegations against Bell and Hobart based on the transaction payments associated with Lockheed Martin's acquisition of Terran.  Opp. at 24–26.  The Eleventh Circuit has made clear that "[h]igher compensation packages, debt covenants and approaching stock offerings are . . . generalized factors [that] go only so far in

3

establishing a guilty mind." *Meyer v. St. Joe Co.*, 2012 WL 94584, at *11 (N.D. Fla. Jan. 12, 2012), *aff'd sub nom. Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013). The allegations here are particularly uncompelling. Plaintiffs argue that Defendants agreed to bring the Company to the brink of insolvency in the hopes of finding a buyer for $0.25 per share, all so that some individuals could earn transaction payments that were less than they could have made selling stock when Terran traded at higher prices. Opp. at 25–26. Plaintiffs' theory is untenable.

**B.      Terran's Proxy Statement Does Not Demonstrate Scienter.**

As set forth in Defendants' Moving Brief – and ignored by the Opposition – the Proxy is consistent with Terran's SEC filings and earnings releases. *See* Br. at 24–26. The Opposition cites to several statements from the Proxy, arguing that Defendants made statements reflected in the Proxy that are inconsistent with statements Defendants made during earnings calls and to the press. Opp. at 20–22. Plaintiffs, however, quote selectively, do not make apples-to-apples comparisons between the Proxy and the other statements, and ignore Terran's SEC filings entirely. For example, the Opposition argues that Bell and Hobart "warned that, absent drastic steps to raise more capital or find a new owner, the 'magnitude' of" Terran's liquidity and cash issues "would render Terran Orbital insolvent . . . ." *Id.* at 21. The referenced meetings took place in the summer and fall of 2023. AC ¶¶ 193–94. Over those same months, Terran issued its Forms 10-Q for the second and third quarters of 2023, both of which disclosed – among other things – dwindling cash. Exs. 5 (Q2 2023 10-Q) at 1–2; 6 (Q3 2023 10-Q) at 1–2. Terran also engaged in two capital raising efforts during that time (September and October). *See* AC ¶¶ 68, 72. And Terran's Form 10-K for 2023 filed in February 2024 included a "going concern" disclosure. *See* Ex. 23 (Additional pages from 2023 10-K) at F-2. Terran's liquidity struggles were far from "undisclosed," as Plaintiffs assert. Opp. at 21. The Proxy statements, especially in light of Terran's other detailed SEC filings, do not create a strong inference of scienter merely because, around the same time,

4

Defendants made general, extemporaneous statements that "the last thing any of us want to do is raise additional cash" or that cash "following our successfully equity offering last month and initial contract payments" would be "sufficient to cover our capital investments and operating use . . . barring any unforeseen events." AC ¶¶ 141, 143. These statements did not alter the total mix of information.

Plaintiffs also rely on the Proxy to argue that Defendants' removal of Rivada from its business model on May 23, 2024 indicates scienter for a statement Bell made nearly 10 days earlier. But Plaintiffs' cited case law fails to support that argument. In *Triton II, LLC v. Randazzo*, 2019 WL 1777726, at *5 (S.D. Fla. Apr. 23, 2019), the Court relied on **at least eight** separate allegations of subsequent events that it found, "collectively" were "sufficient to give rise to the requisite inference of scienter" at an earlier point in time. *Id.* Here, Plaintiffs allege, without more, that Defendants must have known that same information nearly 10 days earlier because Rivada was important and only a short time passed. Opp. at 21–22.[2] Those allegations fall far short of those the court accepted in *Triton*.

### C.    Plaintiffs Cannot Establish Scienter Through "Group Pleading."

The Opposition does nothing to undermine the Moving Brief's argument that the Amended Complaint employs improper group pleading. Opp. at 23; Br. at 19–20, 26. As Plaintiffs' own cited cases make clear, "scienter cannot be inferred merely from a defendant's position." *In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *14 (M.D. Ga. Mar. 23, 2018); *Sides v. Simmons*, 2007 WL 2819371, at *5 (S.D. Fla. Sept. 24, 2007) (finding scienter only where "Plaintiff has individually alleged preparation, compilation, review, and approval of the

---

[2]    Plaintiffs cite *Iowa Public Employees' Retirement System v. MF Global, Ltd.*, 620 F.3d 137, 143 (2d Cir. 2010), but that case does not analyze scienter arguments.

[statements] against each of the Defendants . . . ."); *see also* Opp. at 24.  In both the Amended Complaint and Opposition, Plaintiffs repeatedly refer to only "Defendants," which "makes it impossible" for a Court to assess **each defendant's** state of mind.  *Murdeshwar v. Search Media Holdings Ltd.,* 2011 WL 7704347, at *15 (S.D. Fla. Aug. 8, 2011).   These group-pleading allegations should be ignored because "Plaintiffs fail to clearly distinguish how each Individual Defendant acted purposefully or with severe recklessness."  *Kosowsky v. Icahn Enters. L.P.*, 748 F. Supp. 3d 1303, 1322 (S.D. Fla. 2024).[3]

    **D.**       **Conclusory "Core Operation" Allegations Do Not Satisfy the Reform Act.**

The Opposition adds nothing to support Plaintiffs' misguided reliance on the core operations doctrine, which, as noted in the Moving Brief, the Eleventh Circuit has not recognized. *See City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*, 746 F. Supp. 3d 1395, 1412 (S.D. Fla. 2024).   Instead, the Opposition simply realleges the conclusion that it is "virtually inconceivable" that Defendants did not know that their statements were false and misleading.  Opp. at 27.  "'[M]erely alleging that [something] is a core operation does not lead to a conclusion that [Defendants] acted with scienter because the [Reform Act] requires more.'"  *See* Br. at 27 (quoting *Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1376 (S.D. Fla. 2015)).  The "core operations" doctrine "is not meant to excuse Plaintiffs from offering

---

[3]    Plaintiffs' authorities on this point highlight the Amended Complaint's pleading deficiencies because, in Plaintiffs' cases, the complaints alleged specific facts for each defendant. *See*, *e.g.*, *SEC v. GlobeTel Commc'ns Corp.*, 2008 WL 11333153, at *5 (S.D. Fla. Nov. 12, 2008) (finding allegations articulated "the roles played by each in the alleged fraudulent conduct, the scienter attributable to each Defendant, and the individual acts that would constitute securities violations by each Defendant"); *Phillips v. Sci.-Atlanta, Inc.*, 374 F.3d 1015, 1019 (11th Cir. 2004) (finding the complaint "contains factual allegations amply linking each defendant to his alleged violations of the statute and attributing the required scienter to each defendant with respect thereto"); *Sides*, 2007 WL 2819371, at *5 (finding references in the counts to "defendants" acceptable where the preceding paragraphs specified each individual's role).

specific facts." *Kosowsky*, 748 F. Supp. 3d at 1323.

Plaintiffs reassert only two purported "facts" in support of their argument: (i) that Terran's "very 'survival' hinged on finding a solution to its worsening liquidity profile" and that the topic was discussed by the Board and management, and (ii) "the Rivada Contract represented a whopping 92% of Terran Orbital's future 'backlog.'" Opp. at 27 (quoting AC ¶¶ 106, 211). But Defendants regularly disclosed their cash constraints and backlog to investors, and regardless, the Opposition fails to explain how Rivada portion of Terran's backlog is indicative of fraud.

### E.  Plaintiffs' Remaining Scienter Arguments Are Unavailing.[4]

The Opposition fails to cure the deficiencies in Plaintiffs' remaining scienter arguments. *First*, Plaintiffs argue that this Court should conclude that Hobart and Riffel acted with scienter because they probably had access to private information by means of their positions at Terran. Opp. at 28. Even Plaintiffs' cited case law, however, shows that courts require specific allegations as to a defendant's relationship in the alleged fraud. *See*, *e.g.*, *Flowers Foods*, 2018 WL 1558558, at *14 (scienter sufficiently alleged as to specific defendants based on allegation that the defendants "had access to meaningful and internal reports," including the name of specific reports). Plaintiffs make no such specific allegations here.

*Second*, Plaintiffs' focus on the repetition of Defendants' statements is misplaced. As Plaintiffs' cited authority makes clear, repetition alone is insufficient. *See Theodore v. Purecycle Techs., Inc.*, 2023 WL 4035880, at *6 (M.D. Fla. June 15, 2023) ("[T]he 'most powerful evidence of scienter is the content and context' of the implicated statements themselves and, accordingly,

---

[4]  The Opposition asserts that, in identifying forward-looking statements, Defendants "draw a false distinction between Terran['s] current and long-term cash needs." Opp. at 22. Plaintiffs are wrong because statements concerning a company's performance next week, next month, or next year are all forward-looking statements about the company's future.

while the defendants[] 'repeated statements about core operations' of the business were by themselves insufficient, they were relevant to 'holistic analysis' leading to a finding of scienter.") (citation omitted); *see* Opp. at 28. Moreover, Plaintiffs cannot focus on the alleged repetition of fewer than a dozen general statements about cash flow and liquidity while ignoring the hundreds of pages of disclosures about those same topics in Terran's SEC filings, where Terran repeatedly explained the details of its financial condition.

*Third*, Bell never held himself out as an "expert on the Rivada Contract." Opp. at 28. In fact, the Amended Complaint itself identifies several statements by Bell where he specifically warned investors that he did not control Rivada. *E.g.*, AC ¶¶ 161 ("As far as Rivada goes, I can't comment on what they have or don't have. That's a question for Rivada."), 199 ("[W]hen I talked to Rivada, they feel they are a private company, they don't have to disclose to the public where their money is coming from."). Additionally, Plaintiffs cherry-pick only portions of the December 20, 2023 *Seeking Alpha* article quoting Bell, but the full text of that article reads, "Bell cautioned that he still 'can't guarantee anything' as far as Rivada is concerned. 'The reality is I don't control Rivada,' Bell said. 'I don't control what they pay.'" Ex. 24 (*Seeking Alpha* Article) at 1–2. This is very different from the allegations in *Richard Thorpe v. Walter Investment Management, Corp.*, on which Plaintiffs rely, where the defendant specifically "indicated that he was very knowledgeable regarding regulatory issues and offered to spend the entire morning explaining the regulatory aspect of the business." 111 F. Supp. 3d 1336, 1368 (S.D. Fla. 2015).

*Fourth*, the Opposition does not add anything to Plaintiffs' conclusory allegations that the reassignment of Hobart and departures of Bell, Hobart, and Parekh are suspicious, nor do Plaintiffs attempt to support their argument that Bell, Hobart, and Parekh were allegedly "forced to resign." Opp. at 29. Instead, the Opposition simply reasserts that the timing of the alleged departures was

suspicious and does not engage with Defendants' argument that the timing of personnel changes alone is "not sufficient to raise a strong inference of scienter." *Cheney v. Cyberguard Corp.*, 2000 WL 1140306, at \*9 (S.D. Fla. July 31, 2000), *modified on reconsideration*, 2001 WL 1916564 (S.D. Fla. Mar. 21, 2001) (no scienter based on termination of CFO).[5]

## II.    PLAINTIFFS FAIL TO SHOW ACTIONABLE FALSE STATEMENTS.

The Opposition concedes that Terran's financial disclosures during the Class Period were accurate.  Opp. at 14–15.  To avoid the dismissal required by that concession, the Opposition focuses on the handful of statements that the certain Defendants made on earnings calls and to the press.  However, it does not rebut Defendants' showing that all of the identified statements are inactionable because they are actually true, forward-looking, opinion, and/or puffery.

### A.    The Amended Complaint Fails to Establish That the Alleged Misstatements Were False or Misleading When Made.

The Opposition offers no meaningful response to Defendants' arguments that the Amended Complaint fails to allege facts showing that the purported false or misleading statements were actually false or misleading.

***Rivada Statements.***  Plaintiffs are wrong that Terran "denied that the Rivada Contract was a significant part of Terran Orbital's 2023 revenue outlook."  Opp. at 11.  Terran disclosed the importance of Rivada on numerous occasions.  For example, in its 10-K for 2022, Terran disclosed that it "anticipate[s] that [the Rivada Contract] will form a significant portion of our revenue in 2023 and future fiscal periods. Ex. 2 (2022 10-K) at 14.  Similarly, in its 2023 10-K, Terran stated

---

[5]    The Opposition concedes that SOX certifications alone are not indicative of scienter but reasserts the same conclusory arguments that Defendants must have had access to information showing red flags and indicating that their statements are false and misleading.  Opp. at 29.  For the reasons stated above and in the Moving Brief, this is insufficient. *See* Br. at 26–27; Section I.E. *supra*.

that "[a]s of December 31, 2023, the Rivada [Contract] represented 88% of our backlog." Ex. 1 (2023 10-K) at 15; *see also* Section I.E. *supra* (quoting Bell's warnings about Rivada).

*Statements Regarding Cash Flow.* Plaintiffs assert that Defendants' statements concerning the Company's cash flow concerned their "current comfort" or "current plans to raise more cash," and were inconsistent with Defendants' actions. *See* Opp. at 11–12. But Plaintiffs compare apples to oranges. For example, Plaintiffs argue that Bell's statement that "the last thing any of us want to do is raise additional cash" is inconsistent with a statement by Bell and Hobart nearly two weeks earlier that a "potential capital raise" was under consideration. *Id.* at 2. Those statements, both based on plain language and the passage of time, are not inconsistent.

Plaintiffs also are wrong that Defendants understated the Company's decreasing cash flow. *See id.* at 11–13. In addition to disregarding Defendants' accurate disclosures of the Company's cash flow, Plaintiffs cherry-pick statements to suggest that Defendants were speaking in broad generalities concerning the Company. The full text of several of the challenged statements demonstrate that Defendants were answering questions about specific circumstances or specific points in time, not making blanket statements about cash or liquidity. For example:

| Plaintiffs' Quoted Text | Full Statement |
|---|---|
| "Yeah, we feel very comfortable with our liquidity position as it stands today." AC ¶ 152. | [Q]: So in terms of looking at your cash balances at the end of the quarter and then maybe doing some math on what they might be around now, it would be safe to assume that you're comfortable with your liquidity position in-part due to the ATP?<br><br>Bell: Yes, we feel very comfortable with our liquidity position as it stands today. Ex. 12 (May 14, 2024 Call Tr.) at 13. |
| "We do not have any concerns about that covenant at this time."<br><br>***<br><br>"The answer is yes. We'll meet the requirements; we're well | [Q]: Can you throw some light on the required minimum cash balance?<br><br>Riffel: Minimum cash balance. That's not – so we have financial covenants that require minimum cash balances from our debt arrangements, which is $20 million effectively, as of quarter end.<br><br>[Question]: And you think Terran be okay to meet that requirement? |

| positioned to do this." AC ¶ 153. | Riffel:  We do not have any concerns about that covenant at this time. |
|---|---|
| | Bell:  The answer is yes.  We'll meet the requirements; we're well positioned to do this.  Ex. 12 (May 14, 2024 Call Tr.) at 15. |

***Alleged "Half-Truth" Statements.***  Plaintiffs acknowledge that Terran's financial projections, revenue, operating loss and cash position were accurately reflected in the Company's SEC filings, and Defendants' cautionary disclosures "referred to uncertainties regarding Rivada, financing, and cash flows."  Opp. at 14–16.  That certain unscripted, off-the-cuff remarks – often made in response to specific questions – were less specific or more optimistic than Terran's full SEC filings does not mean that those statements were false and misleading half-truths.  As the court in *In re Supreme Industries, Inc. Securities Litigation* explained:

> The off-the-cuff statement was made in an unscripted portion of an earnings call in response to a question that the Defendants were not told in advance.  This is different than a statement made in, say, a registration statement, a formal document that investors reasonably expect will not contain off-the-cuff judgments.

2018 WL 2364931, at *12 (N.D. Ind. May 23, 2018).[6]

### B.   Defendants' Forward-Looking Characterizations of and Opinions About Terran's Accurately Disclosed Financial Data Are Not Actionable.[7]

#### 1.   Plaintiffs Cannot Attribute All Statements to All Defendants.

Plaintiffs erroneously argue that all Defendants are responsible for making all of the

---

[6]   The cases Plaintiffs cite on page 13 of the Opposition brief are inapposite.  For example, in *SEC v. Merchant Capital, LLC*, the defendant speaker was discussing his business acumen while omitting that he had personally filed for bankruptcy.  483 F.3d 747, 770–71 (11th Cir. 2007).  In *Short Squeeze*, the defendant intentionally used hedging strategies to manipulate the market, while telling investors it did not anticipate its hedging activities would affect revenue.  620 F. Supp. 3d at 1265.  In *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, the plaintiffs relied on firsthand CW testimony about a meeting at which the defendants expressed the opposite of what they had publicly stated.  600 F. Supp. 3d 1189, 1208 (N.D. Ala. 2021).

[7]   Plaintiffs are incorrect that Defendants conceded that statements in AC ¶¶ 147 and 161 were false or misleading.  *See* Br. at 11–12, 14–16.

challenged statements, relying on *Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*, 2009 WL 3853592 (M.D. Fla. Mar. 30, 2009).  Opp. at 19, n.6.  *Rosky* relied on *Barrie v. Intervoice–Brite, Inc.*, 409 F.3d 653 (5th Cir. 2005), for the proposition that a defendant in securities case could be liable for failing to correct someone else's false or misleading statement.  *Barrie*, however, is likely no longer good law following the Supreme Court's ruling in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), which held that only the speaker who "makes" a statement is liable for a § 10(b) violation.  *See*, *e.g.*, *Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051–52 (7th Cir. 2012) ("[N]o statute or rule creates such a duty ['to correct' misstatements made by others] – if there were one, *Janus Capital* itself would have come out the other way."); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 572 n.13 (S.D.N.Y. 2012) ("Holding [one defendant] liable for [another defendant's] alleged false statements based on a failure to correct, or omission, would be in tension with the Supreme Court's recent decision.").

### 2.      Defendants' Opinions Are Not Actionable Under *Omnicare*.

Plaintiffs allege that Defendants' opinion statements, *see* Br. at 16–18, are actionable because Defendants did not honestly hold their opinions concerning Terran's cash flow.  Opp. at 13–15.  But the Opposition does not identify which facts demonstrate which opinions were not honestly held, and Plaintiffs again ignore entirely the facts disclosed in Terran's SEC filings.  *See id.* at 14.[8]  Plaintiffs do not even attempt to explain how it would be reasonable for an investor to believe that "Terran [] had sufficient cash flows to sustain until 'breakeven,' *notwithstanding* its recent results." *Id.* at 15.  For example, Plaintiffs concede that Terran accurately disclosed that

---

[8]      *Shafer v. Global Payments, Inc.*, 2024 WL 2789447 (N.D. Ga. Mar. 29, 2024), Opp. at 14, does not aid Plaintiffs because in *Shafer*, the plaintiffs alleged facts showing that the defendants stated that entity was in full compliance with the law, despite knowing that the entity was named in several lawsuits asserting non-compliance. *Id.* at *5.

cost of sales for 2022 was $111,494,000 and that the Company suffered a loss of $17,257,000.  *See id.*; Ex. 1 (2022 10-K) at 37.  This means that if Terran intended to sell the same number of satellites in 2023, it would need $128,751,000.  But Terran disclosed that it had only $93,561,000 in cash at the start of 2023.  Ex. 25 (Additional pages from 2022 10-K) at F-3.  The same is true for 2023. Ex. 1 (2023 10-K) at 37 (disclosing cost of sales for 2023 was $127,355,000 and profit was $8,560,000).  Terran disclosed that it had only $71,663,000 in cash at the start of 2024, leaving a shortfall of at least $47,132,000.  *Id.* at F-3.

### 3.	The Safe Harbor Protects Defendants' Forward-Looking Statements.

Plaintiffs assert that the safe harbor does not apply because (1) Defendants' statements have a "present-tense [] component," (2) the cautionary language accompanying the statements was insufficient, and (3) the underlying statements were allegedly false.  These arguments fail.

*First*, Plaintiffs mischaracterize Defendants' statements to reach the conclusion that they "represent present facts."  Opp. at 15 (citation omitted).  But the Eleventh Circuit instructs that statements "must be read in context."  *Hoffman v. Authentec, Inc.*, 2009 WL 3109860, at *15 (M.D. Fla. Sept. 24, 2009) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 804 (11th Cir. 1999)).  For example, Plaintiffs argue that Bell "signaled that [Rivada] payments were not part of – or, at the very least, not a large part of – the present model."  Opp. at 15.  Yet Plaintiffs themselves acknowledge this statement was in response to questions concerning the Company's 2023 forecast.  *Id.*  And regardless, the full quote – which Plaintiffs omit from the Opposition – reveals that Bell did **not** say Rivada payments were "not a large part of" the Company's anticipated revenue in 2023. Rather, he informed investors: "Tranche 1 is a big part of it.  **Then you have Rivada right after that**, and you have this new customer, and there is some other things coming down the pipe.  But Tranche 1 is by far the largest part of that component."  AC ¶ 136 (emphasis added).  Similarly, the statements in ¶ 153 are present opinions about **future** payments and therefore are forward-

13

looking.  *Cf. Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1322 (11th Cir. 2019) (distinguishing statements of fact and opinion); *see* Br. at 11, 14–18.

*Second*, contrary to Plaintiffs' argument, *see* Opp. at 16–17, the cautionary language accompanying the statements was detailed and on point.  Indeed, Plaintiffs acknowledge that Defendants' cautionary disclosures "referred to uncertainties regarding Rivada, financing, and cash flows."  *Id.* at 16.  As a result, many of Plaintiffs' cases are inapposite.  *See Asher v. Baxter Int'l, Inc.*, 377 F.3d 727, 733 (7th Cir. 2004) (cautionary language insufficient where it "mentioned none of" the "the major risks [defendant] objectively faced"); *SEC v. Torchia*, 183 F. Supp. 3d 1291, 1313 n.21 (N.D. Ga. 2016) (no cautionary statements where risk factors were "affirmatively deceptive").  Plaintiffs also argue that the disclosures were insufficient because they concerned only "what 'may' or 'could' occur in the future," but that the risks had already "materialized."  Opp. at 25.  But Plaintiffs have not alleged facts showing that the risks had actually come to pass during the Class Period.  For example, Plaintiffs do not allege that Rivada told Terran that it would not fulfill its contractual obligations or that Terran failed to disclose that it was out of cash.

*Third*, Plaintiffs assert that the Reform Act's safe harbor is inapplicable because Defendants allegedly knew that their statements were false or misleading.  This argument fails because the Eleventh Circuit has consistently held that the Reform Act's safe harbor is disjunctive and thus, "if a statement is accompanied by 'meaningful cautionary language,' the defendants' state of mind is irrelevant."  *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 795 (11th Cir. 2010) (quoting *Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999)).

### 4.      Defendants' Optimism Is Not Actionable.

Plaintiffs argue in conclusory fashion that Defendants' statements reflecting generic corporate optimism are actionable because investors might find them "important."  Opp. at 17–18.  However, the challenged statements identified in pages 15–16 of the Moving Brief as corporate

14

optimism are immaterial – even under Plaintiffs' cited case law – because they are "so exaggerated . . . or so vague . . . that a reasonable investor would not rely on it in considering the 'total mix of available information.'"  *Carvelli*, 934 F.3d 1307 at 1320; *see also In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL 3295951, at \*12 (S.D. Fla. Apr. 19, 2013) ("In determining whether the public statements made were 'material,' the Court must make an 'objective inquiry into the significance of an omitted or misrepresented fact to a reasonable investor.'").  That Defendants' optimism did not pan out is not a viable securities law theory.[9]

Plaintiffs argue that Defendants' statements in ¶¶ 140, 149–50, 153, and 159 of the Amended Complaint are not puffery because they are "objectively verifiable."  Opp. at 18.  None of these statements concern "concrete facts," reflect "tangible, verifiable actions" or are "numerically specific," which Plaintiffs' own cases require for a statement to be deemed non-puffery.  *See*, *e.g.*, *Theodore v. Purecycle Techs., Inc.*, 2022 WL 20157415, at \*9 (M.D. Fla. Aug. 4, 2022) (A "quantifiable comparison . . . includes an objective and verifiable fact and cannot be considered puffery."); *City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*, 746 F. Supp. 3d 1395, 1407 (S.D. Fla. 2024) (statements that defendants had taken "tangible, verifiable actions" not puffery); *see also* Opp. at 18; *see* Br. at 15–16.[10]

### CONCLUSION

Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice pursuant to the Reform Act and Federal Rules of Civil Procedure 9(b) and 12(b)(6).

---

[9]     Plaintiffs are wrong that any statement made in response to an investor question is *per se* actionable.  *See*, *e.g.*, *Royal Caribbean*, 2013 WL 3295951, at \*4, \*12.

[10]     For the reasons stated above and in Defendants' Moving Brief, Plaintiffs have failed to plead either a primary violation or facts showing culpable participation.  *See* Br. at 30.

Dated:  June 16, 2025

Respectfully submitted,

By:  */s/ Allen P. Pegg*
Allen P. Pegg (Fla. Bar No. 59782)
allen.pegg@hoganlovells.com
HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 459-6500

Jon M. Talotta (admitted *pro hac vice*)
jon.talotta@hoganlovells.com
HOGAN LOVELLS US LLP
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100

Allison M. Wuertz (admitted *pro hac vice*)
Jacey L. Gottlieb (admitted *pro hac vice*)
allison.wuertz@hoganlovells.com
jacey.gottlieb@hoganlovells.com
HOGAN LOVELLS US LLP
390 Madison Avenue, 9th Floor
New York, New York 10017
Telephone: (212) 918-3000

*Counsel for Defendant Terran Orbital*

By:  */s/ Erin N. Berhan*

Erin N. Berhan, Esq. (Fla. Bar No. 1038948)
erin.berhan@us.dlapiper.com
DLA PIPER LLP
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 423-8500

Jason S. Lewis (admitted *pro hac vice*)
Ryan D. Lantry (admitted *pro hac vice*)
jason.lewis@us.dlapiper.com
ryan.lantry@us.dlapiper.com
DLA PIPER LLP
1900 North Pearl Street, Suite 2200
Dallas, TX 75201
Telephone: (214) 743-4000

16

*Counsel for Defendant Marc H. Bell*

By:  */s/ Stephen E. Hudson*

Parker A. Lewton (Fla. Bar No. 1002490)
Stephen E. Hudson (admitted *pro hac vice*)
plewton@ktslaw.com
shudson@ktslaw.com
KILPATRICK TOWNSEND &
    STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500

Joseph B. Gadberry (admitted *pro hac vice*)
jgadberry@ktslaw.com
KILPATRICK TOWNSEND &
    STOCKTON LLP
4208 Six Forks Road, #1400
Raleigh, North Carolina 27609-5764
Telephone: (919) 420-1700

*Counsel for Defendant Gary A. Hobart*

17

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on June 16, 2025, the foregoing was filed with the Clerk of

Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

By: */s/ Allen P. Pegg*
Allen P. Pegg

18