**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-CV-81191 ARTAU**

| | |
|---|---|
| STEVEN VERZWYVELT, JESSE RAMIREZ, MICHAEL O'NEILL, and JILL O'NEILL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TERRAN ORBITAL CORPORATION, MARC H. BELL, MATHIEU RIFFEL, GARY A. HOBART, and STRATTON SCLAVOS, <br><br> Defendants. | CLASS ACTION |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

1

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 2

I.      PLAINTIFFS' OPPOSITION DOES NOT IDENTIFY PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER. .............. 2

        A.      Plaintiffs' Continued Reliance on the Proxy Is Insufficient. ...................... 2

        B.      Plaintiffs Assert No Plausible Motive Allegations. ................................... 5

        C.      Conclusory "Core Operation" Allegations Do Not Satisfy the Reform Act. ................................................................................................ 6

        D.      Plaintiffs' Remaining Scienter Arguments Are Unavailing. ...................... 7

II.     PLAINTIFFS FAIL TO SHOW ACTIONABLE FALSE STATEMENTS ........... 8

        A.      The SAC Fails to Establish Falsity. .............................................................. 9

        B.      Defendants' Forward-Looking Characterizations of and Opinions About Terran's Accurately Disclosed Financial Data Are Not Actionable. ................................................................................................ 11

            1.     The Safe Harbor Protects Defendants' Forward-Looking Statements. ............................................................................ 11

            2.     Defendants' Optimism Is Not Actionable. .................................... 13

            3.     Defendants' Opinions Are Not Actionable Under *Omnicare*. ....... 14

            4.     Plaintiffs' "Failure to Correct" Theory Fails as a Matter of Law. ............................................................................ 16

CONCLUSION ................................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 21st Century Holding Co. Sec. Litig.*,
    2008 WL 5749572 (S.D. Fla. Nov. 7, 2008)................................................................................12

*Asher v. Baxter Int'l, Inc.*,
    377 F.3d 727 (7th Cir. 2004) .....................................................................................................12

*In re Boston Scientific Corp. Sec. Litig.*,
    646 F. Supp. 3d 249 (D. Mass. 2022) ........................................................................................17

*Brown v. Enstar Grp.*, Inc.,
    84 F.3d 393 (11th Cir. 1996) .....................................................................................................17

*In re Cabletron Sys., Inc.*,
    311 F.3d 11 (1st Cir. 2002)..........................................................................................................6

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) .....................................................................................13, 14, 15

*In re Catalina Mktg. Corp. Sec. Litig.*,
    390 F. Supp. 2d 1110 (M.D. Fla. 2005) .....................................................................................13

*City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*,
    746 F. Supp. 3d 1395 (S.D. Fla. 2024) ...................................................................................7, 14

*In re Comshare Inc. Sec. Litig.*,
    183 F.3d 542 (6th Cir. 1999) .......................................................................................................5

*Doller v. Hertz Glob. Holdings, Inc.*,
    2025 WL 2896919 (M.D. Fla. Oct. 10, 2025) .............................................................................5

*Druskin v. Answerthink, Inc.*,
    299 F. Supp. 2d 1307 (S.D. Fla. 2004) ........................................................................................5

*In re Eagle Bldg. Techs., Inc. Sec. Litig.*,
    319 F. Supp. 2d 1318 (S.D. Fla. 2004) ......................................................................................15

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
    594 F.3d 783 (11th Cir. 2010) ...................................................................................................13

*In re Flowers Foods, Inc. Sec. Litig.*,
    2018 WL 1558558 (M.D. Ga. Mar. 23, 2018)..............................................................................2

*Frank v. Dana Corp.*,
 646 F.3d 954 (6th Cir. 2011) ................................................................................6

*Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*,
 675 F.3d 1047 (7th Cir. 2012) ............................................................................16

*In re Galectin Therapeutics, Inc. Sec. Litig.*,
 843 F.3d 1257 (11th Cir. 2016) ..........................................................................16

*Harris v. Ivax Corp.*,
 182 F.3d 799 (11th Cir. 1999) .......................................................................11, 13

*Hoffman v. Authentec, Inc.*,
 2009 WL 3109860 (M.D. Fla. Sept. 24, 2009) ...................................................11

*Jain v. Nexgen Memantine, Inc.*,
 2021 WL 1578542 (M.D. Fla. Apr. 22, 2021) ....................................................16

*In re Jan. 2021 Short Squeeze Trading Litig.*,
 620 F. Supp. 3d 1231 (S.D. Fla. 2022) .................................................................9

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
 564 U.S. 135 (2011)......................................................................................16, 17

*Kosowsky v. Icahn Enters. L.P.*,
 748 F. Supp. 3d 1303 (S.D. Fla. 2024) ..............................................................2, 7

*Marrari v. Med Staffing Network Holdings, Inc.*,
 395 F. Supp. 2d 1169 (S.D. Fla. 2005) ...............................................................13

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011).................................................................................................4

*Mizzaro v. Home Depot, Inc.*,
 544 F.3d 1230 (11th Cir. 2008) .............................................................................7

*Mogensen v. Body Cent. Corp.*,
 15 F. Supp. 3d 1191 (M.D. Fla. 2014)...................................................................7

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
 2017 WL 3187688 (C.D. Cal. Jan. 17, 2017) .....................................................16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
 575 U.S. 175 (2015)..............................................................................................14

*Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.*,
 2011 WL 4591541 (S.D. Fla. Sept. 30, 2011) ......................................................5

iii

*Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*,
111 F. Supp. 3d 1336 (S.D. Fla. 2015) ...................................................................8

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) ................................................13, 14

*Shafer v. Glob. Payments, Inc.*,
2024 WL 2789447 (N.D. Ga. Mar. 29, 2024).........................................................15

*Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*,
600 F. Supp. 3d 1189 (N.D. Ala. 2021) ..................................................................9

*Sood v. Catalyst Pharm. Partners, Inc.*,
2014 WL 1245271 (S.D. Fla. Mar. 26, 2014)..........................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................1

*Theodore v. Purecycle Techs., Inc.*,
2022 WL 20157415 (M.D. Fla. Aug. 4, 2022) .......................................................14

*Theodore v. Purecycle Techs., Inc.*,
2023 WL 4035880 (M.D. Fla. June 15, 2023).........................................................7

*In re Theragenics Corp. Sec. Litig.*,
137 F. Supp. 2d 1339 (N.D. Ga. 2001) ............................................................15, 16

*Wellcare Health Plans, Inc. v. Farha*,
2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) ......................................................17

## Rules

Fed. R. Civ. P. 9(b) ........................................................................................................17

Fed. R. Civ. P. 12(b)(6)..................................................................................................17

**PRELIMINARY STATEMENT**

Having conceded that Terran's SEC filings during the Class Period were accurate, Plaintiffs are left with nothing more than a securities fraud class action premised on the flimsy theory that a few additional statements by Terran executives during earnings calls negated entirely hundreds of pages of SEC disclosures and misled investors about Terran's financial issues. This Court previously granted Defendants' motion to dismiss that same theory based on nearly identical allegations, concluding that the AC failed to plead particularized facts giving rise to the strong inference of scienter required by the Reform Act[1] and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), and that nearly all the alleged false or misleading statements were inactionable forward-looking statements protected by the Reform Act's safe harbor, non-actionable opinions, or puffery. The SAC is substantively unchanged from the AC – a fact the Opposition ignores entirely – and therefore fails for the same reasons.

*First*, the Opposition confirms that the SAC fails to plead scienter. Plaintiffs torture the text of both the alleged false statements and the Proxy to try to create inconsistency and conflict, but the full text of these statements show no such thing. Nor do Plaintiffs' purported financial motives, including both the alleged desire of individuals to receive compensation and Terran to raise capital, support a strong inference of scienter because they are too generic. And Plaintiffs' "core operations" theory cannot replace the allegations of specific facts the Reform Act requires.

*Second*, the Opposition cannot overcome the SAC's failure to identify any actionable false or misleading statement. Plaintiffs rely on creative pleading to try to tie together public statements and statements described in the Proxy to create "facts" supposedly showing that certain

---

[1] Capitalized terms shall have the same meaning attributed to them as in Defendants' moving papers ("Mov. Br."). "Ex." citations are to the exhibits submitted with Defendants' moving papers.

1

Defendants' statements were false.  As with scienter, however, the full text of the statements forecloses this argument.  The Opposition also fails to successfully rebut Defendants' arguments – and the Court's prior conclusions – that most of the alleged false statements are protected forward-looking statements, opinions, or puffery.  The SAC should be dismissed with prejudice.

## ARGUMENT

I. **PLAINTIFFS' OPPOSITION DOES NOT IDENTIFY PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.**

A. **Plaintiffs' Continued Reliance on the Proxy Is Insufficient.**

The Court previously concluded that Plaintiffs had not "particularly allege[d] how each Defendant is responsible for the statements in the Proxy, nor how the statements in the Proxy correspond to and reveal fraudulent intent or severe recklessness in the actions or statements by each Defendant."  Order at 26.  Plaintiffs have failed to correct this fatal error.[2]  As a preliminary matter, the Opposition ignores entirely that the Proxy is consistent with Terran's SEC filings and earnings releases.  *See* Mov. Br. at 14–17.  While the Opposition purports to discuss the Proxy statements related to each Individual Defendant, Plaintiffs quote selectively and do not make apples-to-apples comparisons between the Proxy and the other statements.

***Bell.***  Plaintiffs argue that Bell's scienter is demonstrated, for example, by a discussion with the Board on August 3, 2023 about Terran's cash needs, liquidity, and the exploration of a potential sale of a Company and then a statement to investors that "'the last thing any of us want to do is raise additional cash' and 'right now, everything is lining up well for us.'"  Opp. at 22

---

[2]      Plaintiffs offer no response to the argument that the SAC engages in impermissible group pleading.  Plaintiffs' own cited cases make clear that "scienter cannot be inferred merely from a defendant's position."  *In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at \*14 (M.D. Ga. Mar. 23, 2018).  Plaintiffs' group-pleading allegations should be ignored because they "fail to clearly distinguish how each Individual Defendant acted purposefully or with severe recklessness."  *Kosowsky v. Icahn Enters. L.P.*, 748 F. Supp. 3d 1303, 1322 (S.D. Fla. 2024).

(citing SAC ¶¶ 193–95).  Plaintiffs do not provide the full context of Bell's public statement, in which he explains in response to an analyst inquiry:

> It's really just about timing of payments at this point.  Right now, the last thing any of us want to do is raise additional cash.  I don't want the dilution . . . .  Last thing I want is any dilution.  So it's really just about timing of payments.  If things work out as planned, we will be in pretty good shape.  So right now, everything is lining up well for us.

SAC ¶ 138.  Bell's statement contains significant caveats, including that "[i]f things work out as planned, we will be in pretty good shape," and Bell's opinion that he would prefer not to raise cash in no way communicates that Terran will not need to raise cash in the future.  And, again, Terran's SEC filings disclosed its cash position in dollars and cents.  *See* Exs. 1, 3–8.  Plaintiffs' attempt to build inferences from the statements in ¶¶ 143–146 and 200 also falls apart when viewed in time: Bell's statements in December 2023, January 2024, and February 2024 about cash needs are not in conflict with Bell's views in late March 2024, when he is alleged to have discussed the **potential** for an at-the-market transaction (which did not happen until July 2024).  Plaintiffs cannot artificially paint separate events as close in time in order to plead scienter.  In addition, Plaintiffs provide no support for their conclusory assumption that "extreme due diligence" gained Bell insight into or indicated in any way that Rivada would be unable to satisfy its financial and contractual obligations.  Opp. at 23; Mov. Br. at 19.

*Hobart*.  Plaintiffs premise their theory of Hobart's "direct knowledge" on a purported inference created by an August 3 statement to the Board and an August 12 statement on an earnings call.  Opp. at 23–24.  Both of those statements, read in full, show that they are entirely consistent.  The Proxy provides that Hobart "not[ed] that **delays in receiving collections** on existing and new expected contract awards **may result** in the Company going into a negative cash position in the coming months," and Hobart later told investors that "the cash flow we generate from our programs and invoicing and collection and invoices **should cover** our needs going forward, and we'll start

3

seeing that ramp up even more so going into 2024." Ex. 18 (Proxy) at 34; SAC ¶ 137.  In other words, the Company believed that the cash flow generated would be sufficient in the future but if there were delays in collections, the Company could end up in a negative cash position.

*Riffel*.  The only "fact" Plaintiffs identify about Riffel's purported scienter does not address his state of mind at all.  According to Plaintiffs, Riffel stated that "[w]e don't have any concerns" about meeting "liquidity obligations" on the "same day" he received financing "terms" from a prospective lender "beyond what the Company could stomach."  Opp. at 24.  But Riffel said nothing about the Company's "liquidity obligations" generally; he said, "[w]e don't have any concerns" "at this time" about meeting a $20 million cash balance debt covenant "at the end of quarter 2."  SAC ¶ 149; Ex. 22 at 15.  Plaintiffs allege no facts suggesting the financing "terms" had anything to do with Terran's ability to meet that covenant, much less that Riffel believed the Company needed the lender to meet the covenant.  And indeed, Terran **did not need** money to meet the covenant.  Plaintiffs now concede the Company met the minimum cash balance at the end of the second quarter, exactly as Riffel predicted.  Opp. at 14.  Plaintiffs thus allege no facts, let alone compelling and particularized facts, supporting a strong inference of scienter as to Riffel.

*Sclavos*.  Plaintiffs' argument that Sclavos (an independent Board member) acted with scienter because he was privy to concerns raised by others fails at its inception, because Sclavos is not alleged to have made **any** false or misleading statements whatsoever – in other words, the SAC fails to allege that Sclavos "acted" at all, much less with scienter.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) ("To establish liability under § 10(b) and Rule 10b–5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud.").  In any event, even if the information available to Sclavos was relevant here, as discussed above and in Defendants' moving papers, the SAC does not plead

specific facts showing that the other Defendants' public statements were inconsistent with the information shared at the Company's Board meetings. *Cf. Doller v. Hertz Global Holdings, Inc.*, 2025 WL 2896919, at *6 (M.D. Fla. Oct. 10, 2025) (scienter inferred from access to information that conflicted with alleged false and misleading statements) (cited by Plaintiffs, *see* Opp. at 25). Sclavos' mere access to information discussed at those Board meetings is therefore wholly insufficient to allege scienter.[3]

### B.   Plaintiffs Assert No Plausible Motive Allegations.

Plaintiffs focus on this Court's brief mention that Bell and Hobart might have stood to benefit from the acquisition between Terran and Lockheed Martin. The Court's decision actually held that – based on the same substantive allegations as reasserted in the SAC – even if "Bell and Hobart stood to profit from the Lockheed Martin acquisition," this alone is insufficient to give rise to an inference of scienter. Order at 28.[4]

It is undisputed that Plaintiffs do not allege any Individual Defendant sold any stock during the Class Period. Plaintiffs try to deflect attention away from the lack of insider stock sales by claiming that "although Defendants held shares, many were not yet vested – meaning they could *not* be sold . . . ." Opp. 26. Plaintiffs' conspicuous lack of specificity is telling. While Individual Defendants held **additional** restricted stock units ("RSUs"), they nonetheless each held substantial

---

[3]    Plaintiffs identify no other individualized allegations to support Sclavos' supposed scienter, which failure is fatal. *See* Order at 27. Sclavos also cannot be held liable for others' statements, as discussed in more detail below. *See* Section II.B.4., *infra*, at 16–17.

[4]    *See also*, *e.g.*, *Philadelphia Fin. Mgmt. of San Francisco, LLC v. DJSP Enters., Inc.*, 2011 WL 4591541, at *17 (S.D. Fla. Sept. 30, 2011) (alleged financial incentive of expedited payment to CEO did not establish an inference of scienter); *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1334–35 (S.D. Fla. 2004) (corporate officers' desire to sell shares at inflated price and increase the size of bonuses is insufficient to allege scienter); *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) (individual defendants' potential of receiving greater compensation if the company's stock price increased was not enough to establish scienter).

common shares that could have been sold.  For example, at the end of the Class Period, Bell held approximately 2.6 million RSUs but nearly **13 million shares** of common stock, which alone – without consideration of the RSUs – would have generated amounts substantially in excess of his change-in-control payments if he had sold those shares during the Class Period.  Exs. 10–11 (Bell Form 4s), 17 (historical stock price).

Equally unsuccessful is the Opposition's argument that scienter is demonstrated because Terran faced an "'existential' threat" and thus had the same generic motive held by all companies and officers to increase its profits.  Opp. at 26.  Not only has this Court already rejected this argument, Order at 25, but also, as the Opposition concedes, the Eleventh Circuit has never recognized this principle.  Opp. at 26–27.  In addition, the cases that Plaintiffs cite for this proposition are inapposite.  For example, in *Frank v. Dana Corp.*, the plaintiffs alleged that the defendants made false statements in order to secure the specific loans that the company needed to survive.  646 F.3d 954, 960 (6th Cir. 2011).  Similarly, in *In re Cabletron System, Inc.*, the plaintiffs alleged that the company wrote purchase orders for "nonexistent sales of merchandise."  311 F.3d 11, 25 (1st Cir. 2002).  And in *Sood v. Catalyst Pharmaceutical Partners, Inc.*, the company made misstatements to increase its stock price to avoid delisting.  2014 WL 1245271, at *6–7 (S.D. Fla. Mar. 26, 2014).  None of those circumstances is present here; Plaintiffs do not allege that Defendants made any false or misleading statement to secure financing or the transaction with Lockheed Martin.  To the contrary, Plaintiffs make only general allegations that Defendants must have made false and misleading statements because Terran faced financial difficulty.

C.      **Conclusory "Core Operation" Allegations Do Not Satisfy the Reform Act.**

The Opposition adds nothing to support Plaintiffs' misguided reliance on the core operations doctrine, which, as noted in the moving papers and this Court's Order, the Eleventh Circuit has not recognized.  *See* Order at 26 ("[M]erely alleging that [Rivada] is a core operation

6

does not lead to a conclusion that Defendants . . . acted with scienter because the PSLRA requires more."); Mov. Br. at 18–19; *City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*, 746 F. Supp. 3d 1395, 1412 (S.D. Fla. 2024).  Instead, the Opposition simply realleges the conclusion that the "commonsense inference is that Terran Orbital's reliance on the Rivada Contract was included" during their internal discussions. Opp. at 27–28.  What Plaintiffs deem "commonsense" falls far below the standard imposed by the Reform Act.  The "core operations" doctrine "is not meant to excuse Plaintiffs from offering specific facts." *Kosowsky*, 748 F. Supp. 3d at 1323.

Plaintiffs reassert two purported "facts" in support of their argument:  (i) Terran's "very 'survival' hinged on finding a solution to its worsening liquidity profile" and the topic was discussed by the Board and management, and (ii) "the Rivada Contract represented a whopping 92% of Terran Orbital's future 'backlog.'"  Opp. at 27–28 (quoting SAC ¶¶ 106, 220–22).  But Defendants regularly disclosed their cash constraints and backlog to investors, and the Opposition fails to explain how Rivada constituting a portion of Terran's backlog is indicative of fraud.

**D.      Plaintiffs' Remaining Scienter Arguments Are Unavailing.**

The Opposition fails to cure the deficiencies in Plaintiffs' remaining scienter arguments.

*First*, the Opposition does not attempt to defend the SAC's CW in response to Defendants' showing that the CW were unreliable and their allegations irrelevant.  *See generally* Opp.; *see also* Mov. Br. at 13–14.  Those allegations should be ignored.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1247–48 (11th Cir. 2008); *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1219 (M.D. Fla. 2014).

*Second*, as Plaintiffs' cited authority makes clear, repetition alone is insufficient to create a strong inference of scienter.  *See Theodore v. Purecycle Techs., Inc.*, 2023 WL 4035880, at *6 (M.D. Fla. June 15, 2023) ("[T]he 'most powerful evidence of scienter is the content and context' of the implicated statements themselves and, accordingly, while the defendants' 'repeated

7

statements about core operations' of the business were by themselves insufficient, they were relevant to 'holistic analysis' leading to a finding of scienter.") (citation omitted).  Moreover, Plaintiffs cannot focus on the alleged repetition of fewer than a dozen general statements about cash flow and liquidity while ignoring the hundreds of pages of disclosures about those same topics in Terran's SEC filings, where Terran repeatedly explained the details of its financial condition.

*Third*, Bell never held himself out as an "expert on the Rivada Contract."  Opp. at 28–29.  In fact, the SAC identifies several statements by Bell where he specifically warned investors that he did not control Rivada.  *E.g.*, SAC ¶¶ 159 ("As far as Rivada goes, I can't comment on what they have or don't have.  That's a question for Rivada."), 210 ("[W]hen I talked to Rivada, they feel they are a private company, they don't have to disclose to the public where their money is coming from.").  Additionally, Plaintiffs cherry-pick only portions of the December 20, 2023 *Seeking Alpha* article quoting Bell, but the full text of that article reads, "Bell cautioned that he still 'can't guarantee anything' as far as Rivada is concerned.  'The reality is I don't control Rivada,' Bell said.  'I don't control what they pay.'"  Ex. 21 (*Seeking Alpha* article) at 1–2.  This is very different from the allegations in *Richard Thorpe v. Walter Investment Management, Corp.*, on which Plaintiffs rely, where the defendant specifically "indicated that he was very knowledgeable regarding regulatory issues and offered to spend the entire morning explaining the regulatory aspect of the business."  111 F. Supp. 3d 1336, 1368 (S.D. Fla. 2015).

In sum, Plaintiffs' minor tweaks to the SAC do not meaningfully change or add support to their scienter allegations.  This Court should reach the same conclusion as it did in the Order and dismiss the SAC for failure to plead a strong inference of scienter against any Defendant.

## II.   PLAINTIFFS FAIL TO SHOW ACTIONABLE FALSE STATEMENTS.

Because the Opposition concedes that Terran's financial disclosures during the Class Period were accurate, Opp. at 14–15, it instead focuses on the handful of statements from earnings

8

calls and media.  However, it does not rebut Defendants' showing that those statements are inactionable because they are actually true, forward-looking, opinion, and/or puffery.

### A.      The SAC Fails to Establish Falsity.

The Opposition offers no meaningful response to Defendants' arguments that the SAC fails to allege facts showing that the purported false or misleading statements were actually false or misleading.  Mov. Br. at 22–24.  Plaintiffs acknowledge that Terran publicly reported its cash position, Opp. at 12, and do not assert that any of the financial information in the filings was inaccurate.  As this Court previously found, "[w]hen the record is viewed in its entirety, Terran Orbital's liquidity risk was well documented and was public knowledge; Terran Orbital did not disguise its cash reserves in its public filings."  Order at 11.[5]

Unable to challenge the lion's share of Terran's public statements, the Opposition makes two main arguments, Opp. at 10–11, but fails to add anything new that should alter the prior outcome of dismissal.  *First*, Plaintiffs argue that Defendants' statements about Terran's liquidity and cash flows were false when made based on comparisons to statements described in the Proxy. As discussed above, however, Plaintiffs' comparisons are faulty because they repeatedly compare statements made at different times about different time periods that, when read in context, are not inconsistent.  *See* Section I.A., *supra*, at 2–5.  For example, Plaintiffs argue that Bell's statement that "the last thing any of us want to do is raise additional cash" is inconsistent with a statement by Bell and Hobart nearly two weeks earlier that a "potential capital raise" was under

---

[5]      Plaintiffs' cases are inapposite.  In *In re Jan. 2021 Short Squeeze Trading Litigation*, the defendant used hedging strategies to manipulate the market, while telling investors it did not anticipate its hedging activities would affect revenue.  620 F. Supp. 3d 1231, 1264–65 (S.D. Fla. 2022).  In *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, the plaintiffs relied on firsthand CW testimony about a meeting at which the defendants expressed the opposite of what they had publicly stated.  600 F. Supp. 3d 1189, 1208 (N.D. Ala. 2021).

consideration.  Opp. at 2.  The plain language of those statements lack conflict:  in short, Terran did not want to raise capital but might need to do so.  Plaintiffs also refer again to Hobart's statement about cash flows covering Terran's needs.  Opp. at 11–12.  This is a particularly egregious example of Plaintiffs' use of selective quotes to artificially create the impression of conflicting statements because the full text shows that Hobart was describing the differing consequences of one action, not offering conflicting views:  if Terran was able to collect amounts due to it, the Company would have sufficient cash, but if collections were not made or delayed, the Company could enter a cash negative position.  *See* Section I.A., *supra* at 3–4.

Plaintiffs concede that Riffel's only challenged statement – "[w]e don't have any concerns" "at this time" about meeting a $20 million cash balance debt covenant "at the end of quarter 2" – was **true**.  Opp. at 13–14; SAC ¶ 149; Ex. 22 (5/14/24 earnings call tr.) at 15.  Plaintiffs now admit that "the Company did meet the covenant that quarter."  Opp. at 14.  In fact, Terran met it by over $10 million.  SAC ¶ 110; Ex. 22 (5/14/24 earnings call tr.) at 15.  Still, Plaintiffs insist that Riffel's statement "was false at the time it was made, regardless of what happened later."  Opp. at 13.  That is because, Plaintiffs say, the "day before," Riffel "had been unable to secure strategic financing." *Id.*  But Plaintiffs argue neither that Terran needed "strategic financing" to meet the covenant nor that Riffel **believed** as much.  On the contrary, Plaintiffs admit that Terran did not need financing to comply, so Riffel's statement proved true both contemporaneously and at quarter-end.

*Second*, Plaintiffs are wrong that Terran "denied that the Rivada Contract was a significant part of Terran Orbital's 2023 revenue outlook."  *Id.* at 14.  Terran disclosed the importance of Rivada on numerous occasions.  For example, in its 2022 10-K, Terran disclosed that it "anticipate[s] that [the Rivada Contract] will form a significant portion of our revenue in 2023 and future fiscal periods."  Ex. 2 (2022 10-K) at 14.  Similarly, in its 2023 10-K, Terran stated that

"[a]s of December 31, 2023, the Rivada [Contract] represented 88% of our backlog." Ex. 1 (2023 10-K) at 15.

### B.   Defendants' Forward-Looking Characterizations of and Opinions About Terran's Accurately Disclosed Financial Data Are Not Actionable.[6]

#### 1.   The Safe Harbor Protects Defendants' Forward-Looking Statements.

Plaintiffs assert that the safe harbor does not apply because (1) Defendants' statements have a "present-tense [] component," Opp. at 15, (2) the cautionary language accompanying the statements was insufficient, and (3) the underlying statements were allegedly false. These arguments fail.

*First*, this Court already considered and rejected Plaintiffs' nearly identical arguments premised on identical facts, concluding that "the statements fall within the PSLRA safe harbor," because (1) the "statements in the relevant paragraphs [] comprise forward-looking language" and (2) "the statements [] are accompanied by meaningful, specific cautionary language," were "explicit, specific, and linked to the concerns underpinning Plaintiffs' claims," and "warned investors of risks of a significance similar to that actually realized – such as the loss of the Rivada contract – and therefore put the investors sufficiently on notice." Order at 13–17.

*Second*, Plaintiffs mischaracterize Defendants' statements to reach the conclusion that they "represent present facts." Opp. at 15. When determining whether a statement is forward-looking, it "must be read in context." *Hoffman v. Authentec, Inc.*, 2009 WL 3109860, at *15 (M.D. Fla. Sept. 24, 2009) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 804–05 (11th Cir. 1999)). For example, Plaintiffs argue that Bell "signaled that [Rivada] payments were not part of – or, at the very least,

---

[6]   Plaintiffs are incorrect that Defendants conceded that statements in SAC ¶¶ 151, 157, 159 were false or misleading, *see* Br. at 22–24, and SAC ¶ 161 does not assert any challenged statements. *See* Opp. at 10 n.3.

not a large part of – the *present* model." Opp. at 15.  But Bell's statement was in response to questions concerning the Company's future **2023 forecast**, which renders the whole statement forward-looking.  Moreover, the full quote – which Plaintiffs omit from the Opposition – reveals that Bell did **not** say or "signal" Rivada payments were "not a large part of [] the *present* model." Rather, he informed investors:  "Tranche 1 is a big part of it.  **Then you have Rivada right after that**, and you have this new customer, and there is some other things coming down the pipe.  But Tranche 1 is by far the largest part of that component."  SAC ¶ 155 (emphasis added).

*Third*, contrary to Plaintiffs' argument, *see* Opp. at 15–17, the cautionary language accompanying the statements was detailed and on point.  As this Court previously found,

> Defendants have adequately listed important factors – the Rivada contract, a history of losses, a limited operating history, significant expenses, lack of positive cash flow – that could cause actual results to differ materially from those in the forward-looking statements.  The language warned investors of risks of a significance similar to that actually realized – such as the loss of the Rivada contract – and therefore put the investors sufficiently on notice.

Order at 17 (citation omitted).  Plaintiffs' cases are inapposite.  *See* Opp. at 16 (citing *Asher v. Baxter Int'l, Inc.*, 377 F.3d 727, 733 (7th Cir. 2004) (cautionary language insufficient where it "mentioned none of" the "the major risks [defendant] objectively faced"); *In re 21st Century Holding Co. Sec. Litig.*, 2008 WL 5749572, at *13 (S.D. Fla. Nov. 7, 2008) (cautionary language insufficient when it "warned of risk that had already been realized")).  Plaintiffs also argue that the disclosures were insufficient because they concerned only "what 'may' or 'could' occur" in the future, but that the risks had already "materialized."  Opp. at 16.  But Plaintiffs have not alleged facts showing that the risks had actually come to pass during the Class Period.  For example, Plaintiffs do not allege that Rivada told Terran that it would not fulfill its contractual obligations or that Terran failed to disclose that it was out of cash.

*Fourth*, Plaintiffs assert that the Reform Act's safe harbor is inapplicable because

12

Defendants allegedly knew that their statements were false or misleading.  But the Eleventh Circuit has consistently held that the Reform Act's safe harbor is disjunctive and thus, "if a statement is accompanied by 'meaningful cautionary language,' the defendants' state of mind is irrelevant." *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 795 (11th Cir. 2010) (quoting *Harris*, 182 F.3d at 803).  Moreover, as described above, Plaintiffs have not demonstrated that Defendants were aware that any challenged statement was false or misleading when made.[7]

### 2.   Defendants' Optimism Is Not Actionable.

This Court previously found the statement in ¶ 153 of the SAC to be immaterial, inactionable puffery.  Nothing in the Opposition or the SAC warrants a different conclusion, and this Court should dismiss the statements in ¶¶ 137–38, 143, 145–46, 149, 157–58 as puffery as well.  Mov. Br. at 27–28.

In Opposition, Plaintiffs reassert their conclusory argument that Defendants' statements reflecting generic corporate optimism are actionable because investors might find them "important."  Opp. at 17–18.  However, even under Plaintiffs' cited case law, the challenged statements Defendants identify as corporate optimism are immaterial because they are "so exaggerated . . . or so vague . . . that a reasonable investor would not rely on [them] in considering the 'total mix of [available] information.'"  *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1320 (11th Cir. 2019) (citation omitted); *see In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL

---

[7]    Plaintiffs' cited cases on this point are inapposite.  *See In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp. 2d 1110, 1116 (M.D. Fla. 2005) (actual knowledge alleged where defendants had access to data that "belied the public statements" and engaged in accounting fraud, and it was "so well known within the company" that "public guidance had little relation to internal financial data" that it became a "joke among employees"); *Marrari v. Med Staffing Network Holdings, Inc.*, 395 F. Supp. 2d 1169, 1189 (S.D. Fla. 2005) (actual knowledge alleged based on "face-to-face meetings with senior level management who informed the [d]efendants" of information).

3295951, at *12 (S.D. Fla. Apr. 19, 2013) ("[T]he Court must make an 'objective inquiry into the significance of an omitted or misrepresented fact to a reasonable investor.'") (citation omitted).

Plaintiffs also argue that those same statements are not puffery because they are "objectively verifiable." Opp. at 17. None of these statements – which include statements such as "the last thing any of us want to do is raise additional cash" and "Rivada is great" – concern "concrete facts" or are "numerically specific," which Plaintiffs' own cases require for a statement to be non-puffery. SAC ¶¶ 67, 158; *see*, *e.g.*, *Theodore, v. Purecycle Techs., Inc.*, 2022 WL 20157415, at *9 (M.D. Fla. Aug. 4, 2022); *City of Warren Gen. Emps.' Ret. Sys.*, 746 F. Supp. 3d at 1407; *see also* Opp. at 17–18.

Finally, Plaintiffs contend that puffery depends on "context," presumably arguing that the Court cannot make that assessment at this time. Opp. at 18. Courts in this Circuit have made abundantly clear, however, that puffery can, and regularly is, identified at the pleading stage, as this Court did in this very case. Order at 19–20; *see also Carvelli*, 934 F.3d at 1320; *In re Royal Caribbean*, 2013 WL 3295951, at *12.[8] The statements Defendants have identified as puffery are immaterial on their faces and Plaintiffs' claims premised on those statements should be dismissed.

### 3. Defendants' Opinions Are Not Actionable Under *Omnicare*.

This Court found that Defendants' statements "express[ing] only belief, feeling, and expectation" are not actionable under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015). Order at 17–18. In particular, the Court found that Plaintiffs failed to allege that "defendants didn't truly believe what they [said]." *Id.* at 18. In response, Plaintiffs assert, without explanation, that "this cannot be squared with the allegation Bell and

---

[8]     Plaintiffs are wrong that any statement made in response to an investor question is *per se* actionable. *See*, *e.g.*, *In re Royal Caribbean*, 2013 WL 3295951, at *4, *12; Opp. at 18.

Hobart were the very ones who repeatedly raised **concerns** behind close doors about Terran Orbital's current cash position." Opp. at 19.  As Defendants explained in their moving papers, the SAC fails to identify any embedded fact or specific allegation with respect to any specific statement to show that the opinion was not honestly held.  Mov. Br. at 29–30.  Indeed, the Opposition's vague reference to "concerns" raised confirms that the SAC does not identify any specific facts to show that Defendants did not honestly believe their opinion statements.  And Plaintiffs again ignore entirely the facts disclosed in Terran's SEC filings.  *See* Opp. at 19.; *see also* Mov. Br. at 19–30.[9]

Plaintiffs argue that "no 'hindsight' is required as Defendants were on notice of these issues before offering their views publicly." Opp. at 19–20.  This Court has already dismissed this precise argument, finding on the same facts that "Plaintiffs have 'failed to allege facts with particularity that give rise to a strong inference that the defendants didn't truly believe what they asserted in the statements in question, or that the statements embedded false facts.'"  Order at 18 (quoting *Carvelli*, 934 F.3d at 1323).  Further, this Court found that "none of [the] statements of opinion are mutually exclusive of – or even inconsistent with – [Defendants'] alleged knowledge," and thus "Plaintiffs have not provided sufficient allegations to render actionable these opinion statements."  *Id.* at 19 (quoting *Carvelli*, 934 F.3d at 1323).  The minimal and non-substantive changes Plaintiffs make to the SAC should not alter this result.[10]

---

[9]     Plaintiffs cite *Shafer v. Global Payments, Inc.*, 2024 WL 2789447 (N.D. Ga. Mar. 29, 2024), Opp. at 19, but in that case, the plaintiffs alleged facts showing that the defendants stated that an entity was in full compliance with the law, while knowing that the entity was named in several lawsuits asserting non-compliance.  2024 WL 2789447, at *5.

[10]     Both of Plaintiffs' cited cases are inapposite.  *In re Eagle Building Technologies, Inc. Securities Litigation* addressed fraud by hindsight in the context of GAAP and GAAS violations by an auditing firm.  319 F. Supp. 2d 1318, 1328 (S.D. Fla. 2004).  In *In re Theragenics Corp. Securities Litigation*, the plaintiffs alleged that the company misled investors about the reasons for

### 4.     Plaintiffs' "Failure to Correct" Theory Fails as a Matter of Law.

Plaintiffs concede that the SAC alleges that Hobart and Riffel made only a single supposed misstatement each, and that Sclavos did not make **any**.  Opp. at 20 n.6.  Nevertheless, Plaintiffs erroneously argue (again) that these Defendants could somehow be responsible for the challenged statements of others simply based on their presence when one or more of those statements were made.  *Id.*  But as the Supreme Court explained in *Janus Capital Group, Inc. v. First Derivative Traders*,  only the "maker of a statement," *i.e.*, the person "stating it," can be liable under Section 10(b) and Rule 10b-5.  564 U.S. 135, 142 (2011).  *See also In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1272 (11th Cir. 2016) ("The Supreme Court has held that a defendant must have 'made' the statement to be liable for a violation of Rule 10b-5(b).")  And following *Janus*, courts in the Eleventh Circuit and throughout the country have rejected Plaintiffs' "failure to correct" theory of liability.  *See*, *e.g.*, *Jain v. Nexgen Memantine, Inc.*, 2021 WL 1578542, at *6 (M.D. Fla. Apr. 22, 2021) ("[S]imply being present when a misrepresentation is made would not render [defendant] responsible for such statement."); *Fulton Cnty. Emps. Ret. Sys. v. MGIC Inv. Corp.*, 675 F.3d 1047, 1051–52 (7th Cir. 2012) ("[N]o statute or rule creates such a duty [to correct misstatements made by others]—if there were one, *Janus Capital* itself would have come out the other way."); *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2017 WL 3187688, at *8 (C.D. Cal. Jan. 17, 2017) (no liability "when a person fails to correct a misstatement or

---

increased sales.  137 F. Supp. 2d 1339, 1349 (N.D. Ga. 2001).  The plaintiffs alleged that doctors told the company that they were ordering more of the company's product only because there was a shortage of the competing product.  *Id.*  The company told the market however, that the increase in sales was the result of doctors' preferring the company's product.  *Id.* at 1342.  Here, Plaintiffs do not allege that Rivada told Terran that it would not be making payments while Terran continued to tell the market that Rivada intended to pay, or that Terran secured financing while simultaneously telling the market that it generated that cash from satellite sales.  *In re Theragenics* has no relevance.

misimpression created by another 'statement maker'") (citations omitted).

Plaintiffs cite two cases to try to salvage their "failure to correct" theory, but both are inapposite. *See* Opp. at 20 n.6. The first, *Wellcare Health Plans, Inc. v. Farha*, 2009 WL 3853592 (M.D. Fla. Mar. 30, 2009), predates *Janus*. And Plaintiffs inaccurately cite the second, *In re Boston Scientific Corp. Sec. Litig.*, claiming it held that a "party who 'impliedly adopted . . . misstatements' by others can properly be considered a 'maker' under *Janus*." Opp at 20, n.6 (citing 646 F. Supp. 3d 249, 276 n.29 (D. Mass. 2022)). But *Boston Scientific* held no such thing. Rather, the court there noted in dicta only that a First Circuit case that *pre-dated Janus* "left open the **possibility** that Rule 10b-5(b) liability may attach" in such a situation. 646 F. Supp. 3d at 276 n.29 (emphasis added). And the only case the court in *Boston Scientific* cited for the proposition that there is disagreement about the viability of a "failure to correct" theory post-*Janus* was a district court case that itself quoted pre-*Janus* Fifth Circuit precedent. *See id.* Plaintiffs' "failure to correct" theory has no basis in law and must be rejected.[11]

## CONCLUSION

Defendants respectfully request that the Court dismiss the SAC with prejudice pursuant to the Reform Act and Federal Rules of Civil Procedure 9(b) and 12(b)(6).

---

[11]  Because the SAC alleges **no** misstatements by Sclavos, it must be dismissed as to him for that reason alone, which Plaintiffs' control person allegations cannot forestall. Contrary to Plaintiffs' argument, *see* Opp. at 30, the SAC does **not** allege that Sclavos conducted Terran Orbital's business affairs, because Sclavos was **not** a senior executive, but instead an independent Board member. *See* SAC ¶¶ 20, 69, 262; *see also Brown v. Enstar Grp.*, Inc., 84 F.3d 393, 396 (11th Cir. 1996) ("In this circuit, a defendant is liable as a controlling person under section 20(a) if he or she had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws and had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.") (cleaned up).

Dated:  February 13, 2026

Respectfully submitted,

By:  */s/ Allen P. Pegg*
Allen P. Pegg (Florida Bar No. 59782)
allen.pegg@hoganlovells.com
HOGAN LOVELLS US LLP
600 Brickell Avenue,
Suite 2700
Miami, FL 33131
Telephone: (305) 459-6500

Jon M. Talotta (admitted *pro hac vice*)
jon.talotta@hoganlovells.com
HOGAN LOVELLS US LLP
8350 Broad St., 17th Floor
Tysons, VA 22102
Telephone: (703) 610-6100

Allison M. Wuertz (admitted *pro hac vice*)
Jacey L. Gottlieb (admitted *pro hac vice*)
allison.wuertz@hoganlovells.com
jacey.gottlieb@hoganlovells.com
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017
Telephone: (212) 918-3000

*Counsel for Defendant Terran Orbital Corporation*

By:  */s/ Erin Berhan*

Erin Berhan, Esq. (Florida Bar No. 1038948)
erin.berhan@us.dlapiper.com
DLA PIPER LLP
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Telephone: (305) 423-8500

Jason S. Lewis (admitted *pro hac vice*)
Ryan D. Lantry (admitted *pro hac vice*)
DLA PIPER LLP
1900 North Pearl Street, Suite 2200
Dallas, TX 75201
Telephone: (214) 743-4000
jason.lewis@us.dlapiper.com
ryan.lantry@us.dlapiper.com

18

*Counsel for Defendant Marc H. Bell*

By: */s/ Stephen E. Hudson*

Parker A. Lewton (Florida Bar No. 1002490)
Stephen E. Hudson (admitted *pro hac vice*)
plewton@ktslaw.com
shudson@ktslaw.com
KILPATRICK TOWNSEND &
   STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500

Joseph B. Gadberry (admitted *pro hac vice*)
jgadberry@ktslaw.com
KILPATRICK TOWNSEND &
   STOCKTON LLP
4208 Six Forks Road, #1400
Raleigh, North Carolina 27609-5764
Telephone: (919) 420-1700

*Counsel for Defendant Gary A. Hobart*

By: */s/ Nicholas J. Siciliano*
Martin B. Goldberg (Florida Bar No. 0827029)
Benjamin R. Shiekman (Florida Bar No. 113114)
mgoldberg@lashgoldberg.com
bshiekman@lashgoldberg.com
LASH GOLDBERG
100 S.E. 2nd Street, Suite 1200
Miami, FL 33131
Telephone: (305) 347-4040

Nicholas J. Siciliano (admitted *pro hac vice*)
Whitney B. Weber (admitted *pro hac vice*)
Renatta A. Gorski (admitted *pro hac vice*)
nicholas.siciliano@lw.com
whitney.weber@lw.com
renatta.gorski@lw.com
LATHAM & WATKINS
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 777-7000

*Counsel for Defendant Mathieu Riffel*

19

By:  */s/ James R. Drabick*

Aaron S. Weiss (Florida Bar No. 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Ave., Ste. 1200
Miami, Florida 33136
Telephone: (305) 530-0050

Peter L. Welsh (admitted *pro hac vice*)
James R. Drabick (admitted *pro hac vice*)
peter.welsh@ropesgray.com
james.drabick@ropesgray.com
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 235-7865

*Counsel for Defendant Stratton Sclavos*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 13, 2026, the foregoing was filed with the Clerk

of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

By:  */s/ Allen P. Pegg*
Allen P. Pegg

20